# CHARLESTON.

CHARLES J. HOUGH v. IDA M. WATSON et al.

Submitted May 2, 1922.     Decided May 9, 1922.

1  EQUITY—*Defendant Setting up Laches, Where Suit Was Begun in Reasonable Time, Must Show Prejudice from Delay.*

The equitable rule of laches will not generally be applied to delay in the prosecution of a suit begun within a reasonable time, and if such delay is relied on, the defendant must set up some facts showing prejudice, as the loss of evidence and the like, on account of which the principle of laches should properly be applied. (p. 162).

2.  MECHANICS' LIENS—*Defendant in Cross-Bill Answer in Action to Enforce Lien Need Not Allege Facts Excusing Delay in Prosecution of Suit.*

A defendant in a cross-bill answer, in a suit brought to enforce a mechanic's lien need not allege therein facts excusing delay in the prosecution of such suit. Any injury to the owner due to such delay is properly the subject of defense on his part to be alleged and proven by him. (p. 165).

3.  ACTION—*Dropping Suit from Docket Without Court Order Held Not Evidence of Intention to Abandon Cause.*

The dropping of such a suit from the docket without an order of the court, pursuant to section 8, chapter 127 of the Code, will not be evidence of an intention to abandon the cause, as without such order all causes stand continued as provided in section 12, chapter 114 of the Code. (p. 166).

4.  MECHANICS' LIENS—*Where Sub-Contractor's Account Served and Recorded Contains all Items of Material and Labor by Date and Description but Price is in Lump Sum, the Lien is not Void for Non-Compliance With Statute.*

When the account of a sub-contractor served upon the owner and recorded contains all the items by date and description of material or labor provided, but the price by separate items is not given but is covered by a sum total as per estimate furnished the principal contractor, there has been substantial compliance with the statute creating such lien, and the lien is not void. (p. 167).

5.  EQUITY—*A Cross-Bill Answer in a Suit by Other Lienors is Not Dismissible as Multifarious, Because Lienor Has Two Liens on Same Tract for Materials for Residence and for Stable.*

When a sub-contractor, though under separate contracts,

has provided material for constructing or repairing a residence and also for constructing a stable on the same lot or tract of land, and filed separate liens therefor, his cross-bill answer filed in a suit brought by another lienor to enforce his and other liens on the property of the owner, is not multifarious and subject to be dismissed on demurrer on that ground. (p. 167).

Appeal from Circuit Court, Marion County.

Suit by Charles J. Hough against Ida M. Watson and others. From an order of the circuit court overruling a demurrer to the bill, the defendant, Thomas J. Davis, trustee, appeals.

*Reversed; Demurrer overruled; Remanded.*

*S. A. Powell,* for appellant.

*Osman E. Swartz* and *Tusca Morris,* for all appellees.

Miller, Judge:

This suit was instituted by plaintiff, a sub-contractor, in 1904, for the purpose of enforcing an alleged mechanic's lien against the real estate of the defendants Ida M. Watson and Lucy L. Watson. The bill made Creed Collins and Charles W. Sprinkle, partners as the Collins Company, and numerous other persons, firms and corporations claiming like liens parties defendant. The bill was first amended in 1907, and a second time in 1908. After the filing of the second amended bill the defendants Ida M. and Lucy L. Watson appeared and demurred thereto, which demurrer being overruled, they filed their joint and several answers to the original and first and second amended bills, at January rules 1909.

After reaching this stage of the case nothing appears to have been done in the cause until March 11, 1911, when there was lodged in the clerk's office a stipulation in writing signed by the respondents Ida M. Watson and Lucy L. Watson, by counsel, in which it was agreed that the depositions of Charles W. Sprinkle, W. W. Hammick, L. C. Jones and Robert M. Boyle, theretofore taken in the bankruptcy proceedings of Hobbs & Company, should become a part of the depositions taken therein and read, treated and considered in all respects as if the same had been regularly taken upon

due notice and duly filed in and for the purposes of this cause. And it was further stipulated that the return of service and the filing of the notices of mechanics' liens of the Collins Company attached thereto made upon the said Ida M., Lucy L. and C. W. Watson were true, and said two notices were filed with and served upon them as in said returns endorsed thereon appeared. This stipulation identified said two mechanics' liens and made the same parts of said stipulation. And it was also further agreed that said stipulation might be and the same was made a part of the record evidence in the cause.

After this stipulation and the lodging of the record from the bankruptcy court, the cause appears to have rested without action until March 21, 1919, when the appellant Thomas J. Davis, trustee in bankruptcy of the estate of the Collins Company, appeared by attorney and moved the court to reinstate the cause upon the docket, the order reciting that it appeared to the court that the same had been inadvertently and without the order of the court dropped from the docket, which motion was granted and the cause was so reinstated; and the trustee then presented his petition for leave to intervene, which was granted, and it being thereby made to appear that subsequent to the institution of the suit the said Collins Company, composed of Creed Collins and C. W. Sprinkle, had been adjudged bankrupts and that said petitioner Thomas J. Davis had been duly elected and confirmed as trustee in bankruptcy and was then acting as such, and that the estate of the bankrupts had not been wound up, and that said proceedings in bankruptcy were still pending, and that the referee therein had, on January 6, 1919, ordered and directed the petitioner to intervene in this cause and prosecute or defend the same, it was further ordered that said petitioner as trustee aforesaid be and he was permitted to intervene and be substituted as party defendant.

The petitioner thereupon tendered his answer in the nature of a cross-bill, which was filed, and on his motion it was remanded to rules with leave to sue out process thereon; and it appearing that since the suit was instituted the de-

fendant Ida M. Watson had died, the cause was revived against Lucy L. Watson and C. W. Watson as devisees.

To this answer and cross-bill the defendants Lucy L. Watson and C. W. Watson appeared and pleaded in abatement of the suit, that petitioner and plaintiff in the cross-bill then appeared to be trustee in bankruptcy of a firm composed of Creed Collins, C. W. Sprinkle and Elbert M. Bonner, whereas the lienors appeared to be a firm composed of Creed Collins and C. W. Sprinkle, not adjudged bankrupts, and they also interposed a motion to set aside the order reinstating the cause on the docket, and to dismiss the answer and cross-bill.

Upon the filing of these pleas Davis, trustee, presented a petition and answer showing that said Elbert M. Bonner subsequent to the institution of the original suit had become a partner of the Collins Company, and that the new firm had succeeded to all the rights and property of the old firm, subsequently adjudged bankrupts, and that included in the assets of the new firm were the claims and liens of the old firm against the property of said respondents; and on his motion the court remanded his amended answer and cross-bill to rules with leave to sue out process thereon.    To this amended petition and answer and cross-bill the defendants Lucy L. and C. W. Watson appeared and moved to strike the case from the docket, which motion was overruled.    Whereupon they demurred thereto, assigning two grounds of demurrer; first, laches; and second, the insufficiency of the second of the two accounts filed to perfect a lien upon what is described therein as the stable and the lot of land on which the same is located.

The circuit court, as appears from the written opinion filed, sustained the demurrer upon the ground of laches, and dismissed the cross-bill; and it is from this decree that appellant Davis, trustee, has appealed.

It was said in the opinion of the circuit judge, and it is argued by counsel for demurrants here, that the answer and cross-bill of appellant alleged no reason or excuse for the long delay in the prosecution of the suit to enforce the alleged liens of the Collins Company.    It appears from the

face of the record that after the institution of the original suit Hobbs & Company, the principal contractors, were adjudged bankrupts, and no doubt some of the delay may properly be attributed to that cause; and it appears that pending the suit the Collins Company, after taking in the new partner, were also adjudged bankrupts, and that their proceedings in bankruptcy were still pending when the trustee intervened in this cause; that he was not appointed such trustee until November 1908, and was not authorized by the bankruptcy court to intervene until January 1919, so that some reason for the delay may be attributable to these facts.

But may it properly be affirmed as a rule of substantive law and practice that a defendant in a suit of this character intervening in person or by representative after such delay must allege in his answer or cross-bill some good reason for not having intervened earlier to prosecute the suit? We think not. The Collins Company could not be prejudiced by failure to institute suit in their own names, for the suit of Hough inured to their benefit by force of sections 10 and 11 of chapter 75 of the Code 1913, and another suit would not have been justified or perhaps warranted by law. For all purposes, therefore, that suit was for their benefit and stopped the running of the statute of limitations, and they could not thereafter be charged with laches in bringing suit. The original bill made them parties and alleged that they had liens. After 1911, when proof of the Collins Company's lien as stipulated was filed, they had made out a case for decree. In suits to enforce judgment liens, the suit of one inures to the benefit of all, and by statute no other creditor can lawfully institute another suit, but must come into the suit first brought and there litigate his rights; and when the cause is referred to a commissioner, all lienors may appear without pleadings and prove and have allowed their judgments or liens. Section 7, chapter 139 Code 1913. And it is questionable whether in suits to enforce mechanics' liens the lienor should be required to do more than to present his lien for audit. But we need not decide this question. Here the lienor did intervene by proper pleadings; the

only question is as to the applicability of the equitable doctrine of laches. We have a number of cases in this state holding that mere delay in the prosecution of a suit will not bar recovery unless some equitable grounds appear why the rule should be applied. After suit brought the defense of laches is generally defensive, and it is for the defendant to show prejudice of some kind, as loss of evidence or evidence of other injuries sustained. The cases cited sustaining this rule are: *Gillespie* v. *Bailey*, 12 W. Va. 70; *Buster* v. *Holland*, 27 W. Va. 510; *Thomasson* v. *Simmons*, 57 W. Va. 576; *McGinnis* v. *Caldwell*, 71 W. Va. 375; *Central D. & P. Telegraph Company* v. *Railway Co.*, 76 W. Va. 120; *Taylor* v. *Taylor*, 76 W. Va. 469. That laches after suit brought and continued is defensive and must be set up and proved is affirmed in *Browning* v. *Browning*, 85 W. Va. 46, 53. This case was decided on its merits at the present term, and the principle of laches applied to the facts developed on the trial. The cases cited and relied on by appellees pertaining to delay in bringing suit have little practical application.

Nor, according to some of the cases, will the dropping of the case from the docket after four years, or at any time, be evidence of an intention to abandon the case or work a discontinuance. To have that effect some order must be made by the court as provided by section 8 of chapter 127 of the Code. Section 12, chapter 114 Code 1906, provides that all causes upon the docket shall stand continued by operation of law whether so ordered or not.

If demurrants have sustained injury by the delay in the prosecution of the suit without justification, as their answer alleges, that fact does not yet appear, for we are considering the demurrer only.                        •

But is the other point of demurrer well grounded, namely, defect in the notice served on defendants and recorded? It is not contended that the notice of the lien on the residence and the land on which it is situated is defective in form or substance. So we can put that question aside. The contention is that the recorded lien on the stable is lacking in that particularity required by the statute. The

only supposed defect pointed out is that it contains lump items or estimates, which on the debit side of the account will not answer the requirement of the statute for dates and items with prices for the same. We decided in *Huntington P. & S. Co.* v. *McGuffin,* 75 W. Va. 574, that the omission of the year when the day of the month appeared and there was sufficient on the face of the account to indicate the year, was not a fatal defect in the notice.

In the present case the account is sufficient as to year and the days of the month of the items charged, but as to a part, not all, the prices are in the aggregate as per estimates given the contractor and are designated by number and the amount brought down at the end of the last item. As for example, under date "1904, April 25—To material per our estimate No. 1025 & 1026, as follows." Then follows every item covered, giving the number and size of pieces, and of doors and window frames. The aggregate of all the items and estimates in the account is $3,095.96. The account shows numerous credits for material not furnished, but which are included among the items covered by the estimates on the debit side of the account. They are credited back by items, with the price of each item, and amount to $1,073.60, showing a net balance due on the account of $2,061.63; but after minor adjustments and reductions, explained in the notice, the net balance is shown to be $1,880.62. The evident purpose of requiring an itemized account to be served by a sub-contractor on the owner is that the latter may be able to check up the account with reference to the material and labor furnished, and to determine therefrom whether they actually went into the building or other structure contracted for. The price of each item is not important, if the aggregate of the whole is shown, and where, as in this case, the price was not by the piece or day, but for the aggregate of particular lots of material, it would hardly be possible to segregate and apply the sum total in that way to each item of material. We think, therefore, that the account filed substantially complied with the requirements of the statute. Substantial compliance with the statute is all that is required. *Mayes*

*v. Ruffners,* 8 W. Va. 384; *U. S. Blowpipe Co.* v. *Spencer,* 40 W. Va. 698; *Central City Brick Co.* v. *R. R. Co.,* 44 W. Va. 286. The account in this case is quite unlike that involved in *Niswander & Co.* v. *Black,* 50 W. Va. 188. The main item in the account there was, "Estimate furnished, four hundred and eighty-five dollars," which gave no intimation of what articles or materials went to make up this estimate. Here, as stated, the items are all given by dates, but the price brought down in the aggregate. Of course lumping them in the account in the Niswander & Company Case was properly held insufficient. The notice there did not furnish the owner with the means of protecting himself in his future dealings with the contractor, as the decision in that case holds the statute requires. In this case the account provided the owner with every means of such protection. This conclusion is justified, we think, by the construction given the statute in *Houston Lumber Co.* v. *Wetzel & Tyler Ry. Co.,* 69 W. Va. 682, 686-7.

Another point of demurrer urged is that the cross-bill answer was multifarious for including therein the lien asserted on the residence property with that on the stable and the lots of land on which these buildings are respectively located. Presumptively the house, the stable and other buildings were located on the one lot and would be treated as a whole, and a mechanic's lien for material or labor provided for the building or repair of either or all the buildings would cover the whole lot. In such a case the lot and buildings constitute one plant. Boisot on Mechanics' Liens, §§ 162 to 166. In section 165 the author says: "A larger amount of land may be included within the lien in the country than in the city, but no definite rule as to the amount that may be included seems to have been generally adopted." In *Bateson* v. *Tool Company,* 75 W. Va. 574, we decided that the fact that certain brick were used in constructing a well on an adjoining lot did not render the lien therefor on the property and plant of the owner invalid. So we do not think the cross-bill multifarious from anything alleged or appearing on the face thereof or the exhibits therewith.

We therefore reverse the order of the circuit court, over-
rule the demurrer, and remand the cause.

*Reversed; Demurrer overruled; Remanded.*