MILLER, Retired Justice, sitting by temporary assignment.

451 S.E.2d 451

SAUER, INC., a Pennsylvania
Corporation, Plaintiff
Below, Appellant,

v.

AMERICAN BITUMINOUS POWER
PARTNERS, L.P. LIMITED PART-
NERSHIP, a Delaware Limited Partner-
ship; Fru–Con Construction Corpora-
tion; North Marion Development, Inc., a
West Virginia Corporation; Horizon
Ventures of West Virginia, Inc., a West
Virginia Corporation; and Songer Cor-
poration, a Pennsylvania Corporation,
Defendants Below, Appellees.

No. 22087.

Supreme Court of Appeals of
West Virginia.

Submitted Oct. 4, 1994.

Decided Nov. 23, 1994.

Alfred J. Lemley, Furbee, Amos, Webb & Critchfield, Fairmont, and George D. Wenick, Smith & Fleming, Atlanta, GA, for appellant.

Kimberly Luff Wakim, Mark F. Nowak, Thorp, Reed & Armstrong, Pittsburgh, PA, for appellees.

PER CURIAM:

This is an appeal by Sauer, Inc., from an order of the Circuit Court of Marion County dismissing its action to enforce a mechanic's lien. In granting the dismissal, a dismissal under Rule 12(b)(6) of the West Virginia Rules of Civil Procedure, the circuit court found that Sauer, Inc., had failed to comply with the accounting requirements of W.Va. Code § 38–2–19 to maintain a mechanic's lien and that it was thus banned from enforcing the lien. On appeal, Sauer, Inc., contends that, under the circumstance of the case, it did provide an adequate accounting and that the accounting which it provided was adequate to preserve its claim. Sauer, Inc., claims that the circuit court's ruling was, therefore, erroneous. After reviewing the questions presented and the documents filed, this Court agrees with the appellant's assertions. The judgment of the Circuit Court of Marion County is, as a result, reversed, and this case is remanded for further development.

By contract dated November 9, 1989, American Bituminous Power Partners, one of the appellees in the present proceeding, engaged Fru–Con Construction Corporation to design and construct a waste coal cogeneration facility in Grant Town, West Virginia. Fru–Con Construction Corporation hired a number of subcontractors to work on the project, including the appellant, Sauer, Inc. Sauer, Inc., specifically entered into three very elaborate contracts with Fru–Con Construction Corporation to provide labor and materials for portions of the cogeneration facility.

In documents filed in the present proceeding, Sauer, Inc., claims that it completely performed and fulfilled its duties under the contracts and that it provided labor and materials with a total value of $7,796,451.00. It also claims that, of this amount, it has been paid only $4,883,707.00.

Within the period prescribed by law, Sauer, Inc., on July 23, 1992, recorded a notice of mechanic's lien in the amount of $2,912,744.00 in the Office of the Clerk of the County Commission of Marion County, West Virginia. On the next day, July 24, 1992, Sauer, Inc., caused a copy of the notice of mechanic's lien to be served on the land owner, American Bituminous Power Partners.

Following the filing of the mechanic's lien, American Bituminous Power Partners requested an accounting from Sauer, Inc., of the work done and the materials supplied under the contracts giving rise to the mechanic's lien. Such request or demand is authorized by W.Va.Code § 38–2–19, which provides:

> The owner may, at any time, by notice in writing, require such subcontractor, laborer, mechanic, workman or other person doing, or causing to be done, work or labor upon such building or other structure or improvement appurtenant thereto, or any such materialman or other person furnishing materials, machinery or other necessary equipment for such work, to file with such owner an itemized account of the work done or caused to be done by such laborer or other person, or of the materials or machinery or other equipment furnished by such materialman or other person for such work, which account shall show the dates upon which such work was done, or such materials were furnished, the price charged therefor, and the nature of such work or materials, and the neglect or failure of any such laborer, mechanic or other person furnishing materials, machinery or other necessary equipment for the doing of the same, so to file such itemized statement with such owner, within ten days after the receipt by him of such written notice so to do, shall release such owner from all responsibility and his property from all lien or charge for all labor done and for all materials furnished by the person so failing to file such required itemized statement, prior to the giving of such notice.

In response to the request for an accounting, Sauer, Inc., acting through its attorney, on August 25, 1992, responded that it had provided labor and materials under three subcontracts. It rather clearly identified the subcontracts and suggested that it had performed as required. A typical part of the response stated:

> The first of the subcontracts is Fru–Con Contract No. 409503.1 000137, under which Sauer agreed generally to provide all work necessary for "the planning, construction documentation (as-built drawings/layout), installation, unloading, care, custody and control of all materials required to perform the Material Handling System Work." Sauer performed this work by mobilizing its project manager on July 15, 1991, and by supplying field labor and material beginning on August 13, 1991, and proceeding continually through and including April 19, 1992. The work was substantially complete on or about March 25, 1992. The price charged for this work is $2,280,461, of which $1,718,700.50 has been paid, leaving a balance due of $561,760.50.

After receiving this response, American Bituminous Power Partners requested an itemized accounting.

On August 31, 1992, Sauer, Inc., again wrote American Bituminous Power Partners and provided somewhat more detailed information as to the work performed. For example, relating to a materials handling contract, Sauer stated:

> The original material handling contract was for $1,539,000. I believe you understand the scope of this work, but nonetheless I am providing you with a copy of Sauer's subcontract with Fru–Con. It contains a detailed listing of the drawings which define the scope of Sauer's work. These drawings form a part of the contract between the owner and Fru–Con, thus they are in your possession and available for reference.
>
> The material handling contract was increased by change order to $1,912,750.15, of which only $1,718,700.50 has been paid. This leaves an unpaid and undisputed balance past due and owing of $194,049.65. In addition, Sauer has claims against Fru–Con totalling $561,760.50 on this subcontract, arising out of Fru–Con's numerous breaches.
>
> The dates on which Sauer performed work under the original scope of the contract, the change orders, and the claim are substantially identical. These were set forth in my previous letter to you in which I advised that Sauer began supplying field labor on August 13, 1991, and proceeded continually through and including April 19, 1992. More specifically, Sauer provided approximately 26,000 man-hours of direct labor in connection with this subcontract, and worked on substantially every working day between the time it began and the time it completed. Sauer has an itemized payroll listing of all men who provided labor in connection with this subcontract, and I will provide it to you if you request it.

It appears that at this time Sauer, Inc., also provided a packet of supplementary information over three inches thick.

American Bituminous Power Partners never responded to the transmission of the additional information.

Subsequent to this activity, Sauer, Inc., timely filed an action in the Circuit Court of Marion County to enforce its mechanic's lien.

Following the filing of the action, American Bituminous Power Partners and the other defendants filed a motion under Rule 12(b)(6) of the West Virginia Rules of Civil Procedure to dismiss for failure to state a claim upon which relief could be granted. In that motion, American Bituminous Power Partners claimed that: "As a result of Sauer's failure to provide American Bituminous with an itemized account as required by West Virginia Code § 38–2–19, Sauer's Mechanic's Lien against the Facility was released." The circuit court took the motion under consideration and, by order entered July 6, 1993, granted it and discharged Sauer's mechanic's lien. It is from that ruling that Sauer, Inc., now appeals.

In *Hough v. Watson*, 91 W.Va. 161, 112 S.E. 303 (1922), this Court discussed the requirement that a person performing work upon property be required to account to the

owner for the work done, the requirement presently covered by W.Va.Code § 38–2–19. In the *Hough* case, the Court concluded:

> The evident purpose of requiring an itemized account to be served by a sub-contractor on the owner is that the latter may be able to check up the account with reference to the material and labor furnished, and to determine therefrom whether they actually went into the building or other structure contracted for. The price of each item is not important, if the aggregate of the whole is shown, and where, as in this case, the price was not by the piece or day, but for the aggregate of particular lots of material, it would hardly be possible to segregate and apply the sum total in that way to each item of material.

91 W.Va. at 167, 112 S.E. at 306.

In the *Hough* case, the Court concluded that an accounting, where the prices were shown in the aggregate and the times designated by days of the month, was sufficient to preserve the mechanic's lien.

It appears that courts generally have concluded that the purpose behind accounting requirements in mechanics' lien statutes is to enable a landowner to determine if work has actually been done. They have further recognized that minute itemization is not necessary to satisfy the accounting requirements. About this, 56 C.J.S. *Mechanic's Liens* § 185(a) (1992) states that:

> The legislative purpose of requiring an itemized lien statement is to facilitate determination that the work billed was actually done and that the charges were appropriate.

And 56 C.J.S. *Mechanic's Liens* § 185(b) (1992) indicates that:

> It is well established that, where the work was done or the materials furnished under an entire contract to do or furnish the work or materials for a gross sum, it is not necessary that the claimant should itemize his account in his lien statement. . . .

Somewhat reinforcing the idea in *Hough v. Watson, supra,* that minute itemization is not always required is this Court's decision in *Grant v. Cumberland Valley Cement Co.,* 58 W.Va. 162, 52 S.E. 36 (1905), where the Court stated in syllabus point 2 that:

> When the basis of such lien is work and labor, and the recorded paper shows the kind, amount and price thereof, failure to enter each month's, day's or years service, as the case may be, as a separate item of charge, and credit each payment as a separate item, with the date thereof, will not vitiate such paper, if, on its face, it discloses with reasonable certainty the kind, amount and contract price of the service and time of performance. Itemization in form is unnecessary, if it appear in substance and effect.

In commenting on this the Court said:

> To require more would impose upon the contractor duties which are outside of the purpose underlying the statute, which is that the owner may be able to ascertain the correctness and reasonableness of the demand asserted against his property. . . .

*Id.* at 166, 52 S.E. at 38.

Although *Grant* dealt with the accounting that had to be filed to perfect a lien, as opposed to the accounting which must be provided to an owner under W.Va.Code § 38–2–19, this Court believes that the fundamental idea that itemization in form is unnecessary if it appears in substance and effect, equally applies under W.Va.Code § 38–2–19, as it suggested in *Hough.*

Consequently, after examining the West Virginia cases dealing with the accounting requirement, as well as authority from other jurisdictions, the Court concludes that a timely-filed accounting which, in substance, allows a landowner to determine whether work claimed has actually been done is sufficient to preserve a subcontractor's mechanic's lien under W.Va.Code § 38–2–19.

In the present case, it rather clearly appears that Sauer, Inc., provided American Bituminous Power Partners with notification that it had provided work in accordance with specific subcontracts. It provided American Bituminous Power Partners those specific contracts. It further appears that approximately 26,000 man hours were involved in providing the work under the contracts and that Sauer, Inc., indicated that it would pro-

vide American Bituminous Power Partners with an itemized payroll, showing who performed the work, and apparently showing when the work was performed, upon request by American Bituminous Power Partners.

Given the scope of the contracts involved in the present case, as in the *Hough* case, the Court believes that it would have been hardly possible to segregate each individual item of work done or each bit of material supplied. Rather clearly, Sauer, Inc., made payroll records available to American Bituminous Power Partners and supplied American Bituminous Power Partners with the contract details under which it was claiming work had been done.

In examining the overall circumstances of this case, the Court concludes that Sauer, Inc., provided American Bituminous Power Partners with a sufficient accounting to determine if Sauer, Inc., had actually provided the labor and materials for which it was seeking remuneration.

■ This Court has recognized that a motion under Rule 12(b)(6) of the West Virginia Rules of Civil Procedure for failure to state a claim should be viewed with disfavor and rarely granted. As indicated in syllabus point 2 of *Stricklen v. Kittle,* 168 W.Va. 147, 287 S.E.2d 148 (1981):

"The trial court, in appraising the sufficiency of a complaint on a Rule 12(b)(6)

motion, should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which he would entitle him to relief." Syl., *Flowers v. City of Morgantown,* 166 W.Va. 92, 272 S.E.2d 663 (1980).

In the present case, where the documents adduced indicate that Sauer, Inc., adequately complied with the accounting requirements of the mechanic's lien statute, the Court believes that the documents filed suggest that it can prove that it is entitled to relief. Under the circumstances, the Court believes that the trial court erred in granting the 12(b)(6) motion.

The judgment of the Circuit Court of Marion County is, therefore, reversed, and this case is remanded for further development.

Reversed and remanded.

BROTHERTON, J., did not participate.

MILLER, Retired Justice, sitting by temporary assignment.