No. 19-0171 – *Horizon Ventures of West Virginia, Inc., a West Virginia corporation, v. American Bituminous Power Partners, L.P.*

**FILED**
**April 1, 2021**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

Justice Hutchison, concurring:

I agree with the outcome of this case and wholly support the majority opinion's conclusion. The circuit court jumped the gun when it declared unconscionable the $50,000-per-year "consultation" contract between Horizon Ventures and American Bituminous Power Partners ("AMBIT"). The 1987 contract was one of many deals negotiated and signed in the late 1980s as part of the construction of a $100 million power plant that the parties expected would operate for at least four decades.[1] Lawyers, bankers, bond specialists, business folks, all sorts of sophisticated actors swirled through the project when the contract was signed. AMBIT dutifully complied with the consultation contract and, by my calculation, paid Horizon $1.5 million over thirty years before someone at AMBIT decided to claim the contract terms were unfair.

---

[1] This Court has noted AMBIT's expectation the power plant will operate until at least 2035. Further, AMBIT has repeatedly "represented its financial condition [was] dire." *Sierra Club v. Pub. Serv. Comm'n of W. Va.*, 241 W. Va. 600, 606, 827 S.E.2d 224, 230 (2019). *See also*, *Am. Bituminous Power Partners, L.P. v. Horizon Ventures of W. Va., Inc.*, No. 14-0446, 2015 WL 2261649, at *4 (W. Va. May 13, 2015) (relating that AMBIT was in default on bond payments, and that "[i]n February of 2013, AMBIT informed Horizon that due to financial difficulties, it would not be making rent payments[.]"); *In re Tax Assessment Against Am. Bituminous Power Partners, L.P.*, 208 W. Va. 250, 252-53, 539 S.E.2d 757, 759-60 (2000) ("[AMBIT] completed construction of its Grant Town power plant in April 1993, at a total cost in excess of $100 million . . . [and] incurred operating losses of $54,563 and $1,657,437 in 1993 and 1994[.]"); *Sauer, Inc. v. Am. Bituminous Power Partners, L.P. Ltd. P'ship*, 192 W. Va. 150, 451 S.E.2d 451 (1994) (contractor filed mechanic's lien because AMBIT failed to pay $2,912,744 for construction services).

1

In light of all the material facts, including the setting, purpose and effect of the 1987 contract, the circuit court should not have granted summary judgment and ruled the consultation contract unconscionable. I concede that unconscionability is probably measured exclusively when the contract is made, and not by what the parties did in the three decades after the making.[2] But the equitable doctrine of unconscionability "permits courts to protect parties from grossly unfair, unconscionable bargains; it does not permit courts to protect commercial litigants from stupid or inefficient bargains willingly and deliberately entered into." *State ex rel. Johnson Controls, Inc. v. Tucker*, 229 W. Va. 486, 497, 729 S.E.2d 808, 819 (2012). I have no idea whether any mendacity was afoot in 1987 when AMBIT agreed to pay Horizon an annual chunk of change for "consulting," but the existing record points to this contract fitting the definition of a "stupid or inefficient bargain willingly entered into."

---

[2] Justice Harshbarger once wrote a detailed history of the doctrine of unconscionability, and he took the position that unconscionability may arise at any time in the life of a contract. He said that unconscionability

> is usually evaluated as of the time a contract is written, but not always. While the strict language of the Restatement and Uniform Commercial Code unconscionability provisions are about unconscionability when the contract was made, I use those provisions as a starting point for my analysis and not as a constraint. In this everchanging world one must be sensitive to the need to evolve rules to fit changed circumstances.

*McGinnis v. Cayton*, 173 W. Va. 102, 114, 312 S.E.2d 765, 777-78 (1984) (Harshbarger, J., concurring).

2

Hence, I agree with the majority opinion's conclusion. My trouble lies in the arbitrary, unfounded rule that the majority opinion relied upon. As I discuss below, the rule says a litigant must prove some measure of *both* procedural *and* substantive unconscionability in order to show a contract or contract term is so unfair and inequitable that it should not be enforced by a court. I write separately because I believe the Court should abandon this rule of law. The majority opinion could have weighed whether *either* procedural *or* substantive unfairness existed and reached the same conclusion.

Prior to 2011, this Court applied a broad, comprehensive analysis to a contract to measure for unconscionability. Prior to 2011, the courts of this State were guided by the rule that "[a]n analysis of whether a contract term is unconscionable necessarily involves an inquiry into the circumstances surrounding the execution of the contract and the fairness of the contract as a whole." Syllabus Point 3, *Troy Min. Corp. v. Itmann Coal Co.*, 176 W. Va. 599, 346 S.E.2d 749 (1986). *See also*, *Art's Flower Shop, Inc. v. Chesapeake & Potomac Tel. Co. of W. Va.*, 186 W. Va. 613, 413 S.E.2d 670 (1991).

Then, just shy of a decade ago, the Court issued *Brown v. Genesis Healthcare Corp.*, 228 W. Va. 646, 724 S.E.2d 250 (2011), and it substantially altered the unconscionability analysis and injected the new point of law at issue in this case. Instead of permitting courts to weigh the totality of a case, the *Brown* Court suddenly required firm proof of *both* procedural *and* substantive forms of unconscionability. Specifically, the *Brown* Court said in Syllabus Point 20:

3

A contract term is unenforceable if it is both procedurally and substantively unconscionable. However, both need not be present to the same degree. Courts should apply a "sliding scale" in making this determination: the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the clause is unenforceable, and vice versa.

The majority opinion in the instant case relied upon Syllabus Point 20 of *Brown* when it concluded that "the circuit court erred in finding the consulting agreement unconscionable without finding even a sliver of procedural unconscionability."

I was curious *why* the *Brown* Court decided to embiggen the rules governing unconscionability, and *why* it adopted the requirement that litigants must show that *both* forms of unconscionability, in some infinitesimal measure, existed at the same time. I reread *Brown*, and the Court's opinion is certainly something to behold. It covers 49 pages of *West Virginia Reports* and *Southeastern Reporter (Second)* and has 170 detailed footnotes. However, the Court's analysis of the law supporting Syllabus Point 20 is less well-detailed. In fact, it is one sentence long. To describe it as an "analysis" is a stretch; it is more of a conclusion. Justice Ketchum, writing for the Court, said:

We perceive that a contract term is unenforceable if it is both procedurally and substantively unconscionable.

228 W. Va. at 685, 724 S.E.2d at 289. This lone sentence is supported by a citation in a footnote to a lone California case. There is no other reasoning, no other analysis, nothing.

Moreover, even though Justice Ketchum drafted Syllabus Point 20 for the *Brown* Court in 2011, he recognized by 2013 that the point of law lacked analysis and

4

support, and said he "believe[d] that this Court should revisit Syllabus Point 20[.]" *Credit Acceptance Corp. v. Front*, 231 W. Va. 518, 534, 745 S.E.2d 556, 572 (2013) (Ketchum, J., concurring).[3] Justice Ketchum supported his belief with citations to several cases where courts had ruled opposite to Syllabus Point 20, and held that a contract or contract term could be invalidated by proof of *either* procedural *or* substantive unconscionability. 231 W. Va. at 533 n.1, 745 S.E.2d at 571 n.1.

I have researched the procedural/substantive dichotomy, and I can find no true, reasoned basis for the simultaneous requirement of both forms of unconscionability. The Uniform Commercial Code (which fueled the modern use of the unconscionability doctrine) does not distinguish between procedural and substantive unfairness, and it does not require proof of both. The *Restatement of the Law of Contracts (Second)* also does not distinguish between the two forms and does not require proof of both. And, like Syllabus Point 20 of *Brown*, the cases from other courts that *do* require procedural plus substantive unconscionability contain no analysis; this formulaic approach to unconscionability is adopted *sans* reasoning. To the contrary, the courts that allow invalidation of agreements for *either* procedural *or* substantive unconscionability are the ones that offer reasoning. I therefore believe the Court should overrule Syllabus Point 20 of *Brown*.

---

[3] Justice Davis expressed a similar opinion in footnote 8 of *Credit Acceptance Corporation*. Justice Davis, writing for the majority, stated that, "[s]eparate from the majority, the author of this opinion independently questions the need for establishing both substantive and procedural unconscionability to find a contractual term is unenforceable." *Credit Acceptance Corp. v. Front*, 231 W. Va. at 526 n.8, 745 S.E.2d at 564 n.8.

5

Let me begin with the Uniform Commercial Code ("the UCC"). Scholars agree that trial courts have, for generations, routinely refused to enforce "unfair" contracts and that the principles of unconscionability have long been a part of the common law. *See generally*, Anne Fleming, *The Rise and Fall of Unconscionability As the "Law of the Poor,"* 102 Geo. L.J. 1383 (2014). The courts may not have used the word "unconscionability," but they often offered pretzel-shaped logic to strike down an unfair bargain. *See*, *e.g.*, *Crotty v. Effler*, 60 W. Va. 258, 54 S.E. 345, 347 (1906) (dismissing plaintiff's suit to enforce contract for the sale of real estate because "[o]nly those contracts which are fair, just, and equitable will be specifically enforced."); *Duncan v. Duncan*, 104 W. Va. 600, 140 S.E. 689 (1927) ("In order to have specific performance of the contract, the burden rests upon the defendants, not only to prove the contract, but that the same is fair, just, and equitable."). The drafters of the UCC recognized the haphazard approach taken by trial courts toward unfair contracts, and as a remedy the drafters included, within Article 2 of the UCC, a uniform unconscionability provision. Article 2, which pertains to "transactions in goods," was adopted by the West Virginia Legislature in 1963. W. Va. Code § 46-2-102 (1963). Legal historians agree that the nationwide adoption of the UCC boosted the general use of unconscionability by trial courts as a tool to invalidate all types of unfair contracts, not just those contracts for transactions in goods.

The UCC's unconscionability provision (§ 2-302) does not distinguish between "procedural" or "substantive" unconscionability. More importantly, the provision

does not require the simultaneous proof of both forms. The provision, as adopted verbatim by the West Virginia Legislature from the UCC, states:

> (1) If the court as a matter of law finds *the contract or any clause of the contract* to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

> (2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination.

W. Va. Code § 46-2-302 (1963) (emphasis added). The official comments to the statute announce that "[t]his section is intended to make it possible for the courts to police explicitly against the contracts or clauses which they find to be unconscionable." W. Va. Code § 46-2-302, cmt. 1. Hence, when a party challenges a contract or contract clause regarding a transaction in goods, the only statutory requirement for the party to prevail is that the court find the bargain "to have been unconscionable at the time it was made." "The basic test is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract." *Id.*[4]

---

[4] One UCC treatise notes that courts often distinguish between and discuss procedural and substantive aspects of unconscionability, but then go on to note that, in the

Conspicuously absent from the UCC provision is any explicit reference to procedural aspects of unconscionability.  West Virginia Code § 46-2-302 refers solely to "the contract or any clause of the contract," suggesting that the drafters of the UCC (and, by implication, the Legislature) contemplated that substantive unconscionability alone would be sufficient.  Bolstering this conclusion is that the UCC provides an instance for *per se* unconscionability if there is, standing alone, a substantive *term* in a contract limiting a person's consequential damages for an injury involving a consumer good.  *See* W.Va. Code § 46-2-719 (3) (1963).[5]  It is logically inconsistent to argue that there is an implied

---

end, unconscionability rulings should be based on the totality of the circumstances and not whether there is formulaic proof of both procedural and substantive forms:

> The point is frequently made that unconscionability has both procedural and substantive aspects.  In fact, courts seldom base their decisions upon the classification of unconscionability as being procedural or as being substantive
>
> To the contrary, the courts have almost always looked to the totality of all of the circumstances.  The mandated hearing [in W. Va. Code 46-3-302(2)] as to the character of the contract in its commercial setting *necessarily requires the court to see the total forest without regard to whether a particular tree is procedural or substantive.*

Lary Lawrence, 2A *Lawrence's Anderson on the Uniform Commercial Code* § 2-302:148 (3d. Ed. 2020) (emphasis added).  The author of this treatise goes on to note that "[m]aking a distinction between procedure and substance tends to be a futile exercise of rhetoric" because the "question of unconscionability depends upon a consideration of the totality of circumstances."  *Id.*, § 2-302:150.

[5] West Virginia Code § 46-2-719 (3) provides (with emphasis added):

> (3) Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable.  *Limitation of consequential damages for injury to the person in the case of*

requirement in West Virginia Code § 46-2-302 that a party show some procedural unfairness when unconscionability under West Virginia Code § 46-2-719 clearly does not.

Like the UCC, the *Restatement of the Law of Contracts (Second)* makes no explicit reference to distinctions between procedural or substantive forms of unfairness. The *Restatement* simply says that courts may refuse to enforce an "unconscionable contract or term":

> If a contract or term thereof is unconscionable at the time the contract is made a court may refuse to enforce the contract, or may enforce the remainder of the contract without the unconscionable term, or may so limit the application of any unconscionable term as to avoid any unconscionable result.

*Restatement of the Law of Contracts (Second)*, § 208 (1981). The drafters of the *Restatement* did not view unconscionability through a prism of individual substantive or procedural elements, but as a holistic matter for courts "made in the light of [a contract's or a term's] setting, purpose, and effect." *Id.*, cmt. a. "A determination that a contract or term is unconscionable is made by the court in the light of all the material facts." *Id.*, cmt. f. The drafters of the *Restatement* defined "unconscionable" using its broad, historic definition:

> Traditionally, a bargain was said to be unconscionable in an action at law if it was "such as no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other[.]" . . . The principle is one of the prevention of oppression and unfair surprise . . .

---

> *consumer goods is prima facie unconscionable* but limitation of damages where the loss is commercial is not.

9

and not of disturbance of allocation of risks because of superior bargaining power.

*Id.*, cmt. b. The drafters made clear that "[p]articular terms may be unconscionable whether or not the contract as a whole is unconscionable. . . . Other terms may be unconscionable in some contexts but not in others. Overall imbalance and weaknesses in the bargaining process are then important." *Id.*, cmt. e.[6]

Following the adoption of the UCC's unconscionability provision by West Virginia and other states, scholars calculated that unconscionability can arise in the making of a contract (procedural unconscionability) or can exist in the actual terms of the contract (substantive unconscionability). Professor Arthur Leff appears to have published the seminal article splitting the analysis of unconscionability into two distinct forms. Professor Leff said, in his 1967 law review article, "I shall often refer to bargaining naughtiness as 'procedural unconscionability,' and to evils in the resulting contract as 'substantive unconscionability.'" *See, e.g.*, Arthur Allen Leff, *Unconscionability and the Code – The*

---

[6] This comment to § 203 implies that while the focus of courts should be on the unfairness of the terms of a contract, sometimes courts may consider the process that went into forming the contract. In other words, the drafters of the *Restatement* contemplated that unconscionability includes procedural and substantive elements. While this is true, the clear intention of the drafters was to empower courts to examine contracts "as a whole" when measuring unconscionability, and not to require courts to break every contract into its constituent procedural and substantive parts, analyze those parts for unfairness, and then add the unfairness together to derive whether unconscionability has occurred.

*Emperor's New Clause*, 115 U. Pa. L. Rev. 485, 487 (1967). It thereafter became routine for scholars to discuss contractual unfairness as having procedural and substantive forms.

The case law followed the scholars: courts likewise began to explain how unfairness can be manifested during the making of a contract (such as high pressure or misleading bargaining tactics on one side and poor education or business savvy on the other) or in the actual contract itself (usually in the form of overly harsh or one-sided results). The *Brown* Court followed the same path as those scholars and other courts. In a discussion stretching across seven pages, Justice Ketchum defined the doctrine of unconscionability (even citing to a case from 1750), outlined its procedural and substantive forms, and recognized that there is often an "interplay" between the two forms. *Brown v. Genesis Healthcare Corp.*, 228 W. Va. at 679-685, 724 S.E.2d at 283-289.

The problem, as I noted earlier, is that after recognizing that unconscionability has procedural and substantive aspects, with no reasoning other than saying "we perceive it should be the rule," the *Brown* Court adopted Syllabus Point 20 and required a party challenging a contract to prove *both* procedural *and* substantive forms of unconscionability existed. Implicitly recognizing the harshness of this requirement, the *Brown* Court then tempered the rule by creating a "sliding scale," and allowing proof of one form in an infinitesimal amount if the other form was overwhelming. Many other state courts have adopted the same rule as the *Brown* Court (with or without the sliding scale)

and stated that the absence of simultaneous proof of both procedural and substantive

unfairness is fatal to an unconscionability challenge.[7]

---

[7] States requiring both procedural and substantive unconscionability include California (*Armendariz v. Found. Health Psychcare Servs., Inc.*, 6 P.3d 669, 690 (Cal. 2000) ("The prevailing view is that [procedural and substantive unconscionability] must both be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability. . . . Essentially a sliding scale is invoked . . . In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.") (Cleaned up)); Florida (*Basulto v. Hialeah Auto.*, 141 So. 3d 1145, 1159 (Fla. 2014) ("[P]rocedural and substantive unconscionability must be established to avoid enforcement of the terms within an arbitration agreement.")); Maryland (*Freedman v. Comcast Corp.*, 988 A.2d 68, 85 (Md. 2010) ("The prevailing view is that both procedural and substantive unconscionability must be present in order for a court to invalidate a contractual term as unconscionable.")); Ohio (*Hayes v. Oakridge Home*, 908 N.E.2d 408, 412 (Ohio 2009) ("The party asserting unconscionability of a contract bears the burden of proving that the agreement is both procedurally and substantively unconscionable.")); Pennsylvania (*Salley v. Option One Mortg. Corp.*, 925 A.2d 115, 119 (Pa. 2007) ("[A] contract or term is unconscionable, and therefore avoidable, where there was a lack of meaningful choice in the acceptance of the challenged provision and the provision unreasonably favors the party asserting it.")); New Jersey (*Delta Funding Corp. v. Harris*, 912 A.2d 104, 111 (N.J. 2006) ("Courts generally have applied a sliding-scale approach to determine overall unconscionability, considering the relative levels of both procedural and substantive unconscionability.")); and Wisconsin (*Coady v. Cross Country Bank*, 729 N.W.2d 732, 741 (Wis. 2007) ("To tip the scales in favor of unconscionability requires a certain quantum of procedural plus a certain quantum of substantive unconscionability.")). *See also Blackrock Cap. Inv. Corp. v. Fish*, 239 W. Va. 89, 97, 799 S.E.2d 520, 528 (2017) (Examining a contract involving a corporate subsidiary that "was a hapless pawn destined for sacrifice on the altar of corporate law," this Court noted that New York law requires a showing "the contract was both procedurally and substantively unconscionable when made—i.e., some showing of an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.").

Interestingly, many of the reported cases where courts required both forms of unconscionability involved parties seeking to avoid contracts with mandatory arbitration provisions. Arbitration disputes pit the inherent prejudice of trial courts in favor of juries against federal and state statutes expressing legislative favor for arbitration. The result of the contest is that courts seem to be requiring proof that both forms of unconscionability

I have examined these cases from other state courts, and I am struck that, like the *Brown* Court, these courts provide no reasoning why solid proof of both forms is required to support a finding that a contract or term is unenforceable. I am not alone in this conclusion. Just as many state courts have gone the opposite direction from *Brown* and found that *either* procedural *or* substantive unconscionability is sufficient.[8] These

existed simultaneously as a roundabout means of reaching the legislative preference for arbitration.

In my opinion, the doctrine of unconscionability has been diluted and sullied by its persistent invocation in the field of mandatory arbitration contracts.

[8] States requiring *either* procedural *or* substantive unconscionability include Illinois (*Razor v. Hyundai Motor Am*., 854 N.E.2d 607, 622 (Ill. 2006) ("Unconscionability can be either 'procedural' or 'substantive' or a combination of both.")); Missouri (*Brewer v. Missouri Title Loans, Inc.*, 323 S.W.3d 18, 22 (Mo. 2010) (*cert. granted, judgment vacated on other grounds,* 563 U.S. 971 (2011)) ("Under Missouri law, unconscionability can be procedural, substantive or a combination of both.")); Mississippi (*East Ford, Inc. v. Taylor*, 826 So. 2d 709, 717 (Miss. 2002) ("Because we find that the arbitration clause in this case is procedurally unconscionable, we find it unnecessary to address Taylor's . . . arguments regarding substantive unconscionability.")); New Mexico (*Cordova v. World Fin. Corp. of NM*, 208 P.3d 901, 908 (2009) ("While there is a greater likelihood of a contract's being invalidated for unconscionability if there is a combination of both procedural and substantive unconscionability, there is no absolute requirement in our law that both must be present to the same degree or that they both be present at all.")); Utah (*Res. Mgmt. Co. v. Weston Ranch & Livestock Co*., 706 P.2d 1028, 1043 (Utah 1985) ("Gross disparity in terms, absent evidence of procedural unconscionability, can support a finding of unconscionability.")); Vermont (*Glassford v. BrickKicker*, 35 A.3d 1044, 1049 (Vt. 2011) ("The superior court was mistaken in assuming that the presence of procedural unconscionability is required to void a contract based on it containing unconscionable terms.")); and Washington (*Adler v. Fred Lind Manor*, 103 P.3d 773, 782 (Wash. 2004) ("[S]ubstantive unconscionability alone can support a finding of unconscionability.")). *See generally*, Melissa T. Lonegrass, *Finding Room for Fairness in Formalism-the Sliding Scale Approach to Unconscionability*, 44 Loy. U. Chi. L.J. 1 (2012).

Some states, like Texas, belie categorization. One the one hand, one Texas intermediate appellate court ruled that a party must prove *both* procedural *and* substantive unconscionability. *See In re Turner Bros. Trucking Co., Inc.*, 8 S.W.3d 370, 376–77 (Tex.

13

"either/or" states apply the general definition of unconscionability found in the UCC, the *Restatement*, and in the common law, and refuse to enforce a contract merely because an "overall and gross imbalance, one-sidedness or lop-sidedness" exists in either the terms or formation of a contract. Syllabus Point 12, *Brown*, 228 W. Va. at 657, 724 S.E.2d at 261.

In summary, trial courts should not be pinned down by appellate court imposition of clever-sounding slide-rule formulas saying that only procedural plus substantive unfairness equals unconscionability. Courts should be allowed to weigh unconscionability questions as a holistic concept and be permitted to consider the overall fairness of the parties' bargain at the time it was formed.

I would, therefore, abandon and overrule Syllabus Point 20 of *Brown* and make clear that, under West Virginia law, a claim of unconscionability can be supported by proving unfairness in the contract that is either procedural, substantive or a combination of both.

---

App. 1999) ("Under Texas law, the party asserting unconscionability of the contract bears the burden of proving both procedural and substantive unconscionability."). On the other hand, nine years later, the Texas Supreme Court ruled that provisions of a contract were unenforceable *solely* on the grounds of substantive unconscionability. *In re Poly-Am., L.P.*, 262 S.W.3d 337, 348 (Tex. 2008) ("A contract is unenforceable if, given the parties' general commercial background and the commercial needs of the particular trade or case, the clause involved is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract. . . . Unconscionability is to be determined in light of a variety of factors, which aim to prevent oppression and unfair surprise; in general, a contract will be found unconscionable if it is grossly one-sided.") (Cleaned up)).