**IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA**

**January 2013 Term**

**FILED**

**June 19, 2013**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 11-1646

**CREDIT ACCEPTANCE CORP.,**
**Defendant Below, Petitioner**

**V.**

**ROBERT J. FRONT AND BILLYE S. FRONT,**
**Plaintiffs Below, Respondents**

---

**Appeal from the Circuit Court of Raleigh County**
**Honorable Harry L. Kirkpatrick, III, Judge**
**Civil Action Nos. 11-C-289(K) and 11-C-290(K)**

**REVERSED AND REMANDED**

---

**AND**

No. 12-0545

**CREDIT ACCEPTANCE CORP.,**
**Defendant Below, Petitioner**

V.


**OCIE SHREWSBURY,**
**Plaintiff Below, Respondent**

_____

**Appeal from the Circuit Court of Raleigh County**
**Honorable John A. Hutchison, Judge**
**Civil Action No. 11-C-391-H**

**REVERSED AND REMANDED**

_____


**Submitted: April 10, 2013**
**Filed:  June 19, 2013**

| | |
|---|---|
| **Don C. A. Parker** | **Ralph C. Young** |
| **Bruce M. Jacobs** | **Christopher B. Frost** |
| **Nicholas P. Mooney** | **Hamilton Burgess Young & Pollard** |
| **Spilman Thomas & Battle, PLLC** | **Fayetteville, West Virginia** |
| **Charleston, West Virginia** | **Attorneys for the Respondents,** |
| **Attorneys for the Petitioner** | **Robert J. Front & Billye S. Front** |
| | |
| | **Ralph C. Young** |
| | **Christopher B. Frost** |
| | **Steven R. Broadwater, Jr.** |
| | **Hamilton Burgess Young & Pollard** |
| | **Fayetteville, West Virginia** |
| | **Attorneys for the Respondent,** |
| | **Ocie Shrewsbury** |

**JUSTICE DAVIS delivered the Opinion of the Court.**

**JUSTICE KETCHUM concurs and reserves the right to file a concurring opinion.**

**SYLLABUS BY THE COURT**

1.      An order denying a motion to compel arbitration is an interlocutory ruling which is subject to immediate appeal under the collateral order doctrine.

2.      "'A contract term is unenforceable if it is both procedurally and substantively unconscionable.  However, both need not be present to the same degree.  Courts should apply a 'sliding scale' in making this determination:  the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the clause is unenforceable, and vice versa.'  Syllabus Point 20, *Brown v. Genesis Healthcare Corp.*, 228 W. Va. 646, 724 S.E.2d 250 (2011)[, *overruled in part on other grounds by Marmet Health Care Center, Inc. v. Brown*, ___ U.S. ___, 132 S. Ct. 1201, 182 L. Ed. 2d 42 (2012) (per curiam).]"  Syllabus point 9, *Brown v. Genesis Healthcare Corp.*, 229 W. Va. 382, 729 S.E.2d 217 (2012).

3.      Where an arbitration agreement names a forum for arbitration that is unavailable or has failed for some reason, a court may appoint a substitute forum pursuant to section 5 of the Federal Arbitration Act, 9 U.S.C. § 5 (1947) (2006 ed.), only if the choice of forum is an ancillary logistical concern.  Where the choice of forum is an integral part of

i

the agreement to arbitrate, the failure of the chosen forum will render the arbitration agreement unenforceable.

4.      "A state statute, rule, or common-law doctrine, which targets arbitration provisions for disfavored treatment and which is not usually applied to other types of contract provisions, stands as an obstacle to the accomplishment and execution of the purposes and objectives of the Federal Arbitration Act, 9 U.S.C. § 2, and is preempted."  Syllabus point 8, *Brown ex rel. Brown v. Genesis Healthcare Corp.*, 228 W. Va. 646, 724 S.E.2d 250 (2011), *overruled in part on other grounds by Marmet Health Care Center, Inc. v. Brown*, ___ U.S. ___, 132 S. Ct. 1201, 182 L. Ed. 2d 42 (2012) (per curiam).

**Davis, Justice:**

Two appeals have been consolidated for decision in this matter. In these consolidated appeals, Credit Acceptance Corp., petitioner (hereinafter "Credit Acceptance"), appeals orders issued by the Circuit Court of Raleigh County in each case that denied Credit Acceptance's motion to compel arbitration.[1] Credit Acceptance contends that, in both of these cases, the circuit courts erred by concluding that the arbitration agreements were unconscionable based upon the unavailability of arbitration forums named therein, and because the debtors in the agreements waived their respective rights to a jury trial. Because we find that one of the arbitration forums named in the agreements remains available to arbitrate the parties' disputes, and because an arbitration agreement is not rendered unenforceable solely because a party thereto waives his or her right to a jury trial, we reverse both of these cases and remand for entry of orders compelling arbitration.

## I.

## FACTUAL AND PROCEDURAL HISTORY

The cases underlying these consolidated appeals all involve the purchase of an automobile. We relate the particular facts of each case separately below.

---

[1]The motions each sought to have the case dismissed or, in the alternative, stayed pending arbitration.

1

### A. *Front Plaintiffs*

On August 17, 2007, Robert and Billye Front (hereinafter collectively "the Fronts") purchased a 2003 Chevrolet Cavalier automobile from Finish Line Pre-Owned Auto Sales (hereinafter "Finish Line"). To purchase this vehicle, the Fronts executed a retail installment and security agreement with Finish Line. Finish Line assigned all its rights, title, and interest in the contract and the vehicle to Credit Acceptance in exchange for Credit Acceptance financing the purchase.

Thereafter, on April 17, 2008, the Fronts purchased a 2005 Ford Focus vehicle from Prestige Ford Lincoln-Mercury, Inc. (hereinafter "Prestige"). As with their first automobile purchase, the Fronts executed a retail installment contract with Prestige. Prestige subsequently assigned all its rights, title, and interest in the contract to Credit Acceptance.

Both of the retail installment contracts executed by the Fronts in connection with their vehicle purchases contained arbitration clauses. The clauses were nearly identical[2] and stated, in part:

> The Federal Arbitration Act governs this Arbitration Clause. You and we understand and agree that You and we choose arbitration instead of litigation to resolve Disputes. <u>You and we</u>

_____

[2]Differences in the two contracts are noted below.

2

voluntarily and knowingly waive any right to a jury trial. . . .[3]

　　　. . . .

　　　You or we may elect to arbitrate under the rules and procedures of either the National Arbitration Forum or the American Arbitration Association; however in the event of a conflict between these rules and procedures and the provisions of this Arbitration Clause, You and we agree that this Arbitration Clause governs for that specific conflict.  You may obtain the rules and procedures, information on fees and costs (including waiver of the fees), and other materials, and may file a claim by contacting the organization of your choice. . . .

　　　. . . .

　　　It is expressly agreed that this Contract evidences a transaction in interstate commerce.[4]  The Arbitration Clause is governed by the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq. ("FAA") and not by any state arbitration law.

(Footnotes added).  After the Fronts executed the aforementioned contracts, one of the selected arbitration forums, the National Arbitration Forum (hereinafter "NAF"), was sued by the State of Minnesota.  As a result of this suit, the NAF entered into a consent decree forbidding it from conducting consumer arbitration. *See CompuCredit Corp. v. Greenwood,* ___ U.S. ___, ___ n.2, 132 S. Ct. 665, 677 n.2, 181 L. Ed. 2d. 586 (2012) ("In 2009, after the Attorney General of Minnesota filed an action alleging that NAF had engaged in numerous violations of consumer-protection laws, NAF entered into a consent decree barring

---

[3]This language was not underlined in the contract for the purchase of the 2003 Chevrolet Cavalier.

[4]This sentence did not appear in the contract for the purchase of the 2003 Chevrolet Cavalier.

it from handling consumer arbitrations.").  Shortly thereafter, "[i]n July 2009, AAA issued a moratorium on arbitrating cases concerning consumer debt collections if those cases were brought by the company and the consumer did not consent to the arbitration." *Montgomery v. Applied Bank*, 848 F. Supp. 2d 609, 613 (S.D.W. Va. 2012).  Thus, one of the contractually designated arbitrators, NAF, was no longer available to arbitrate any dispute that arose under the Credit Acceptance/Front contracts, and the other designated arbitrator, AAA, was available only on a limited basis.

The Fronts commenced two civil actions against Credit Acceptance in the Circuit Court of Raleigh County in May 2011.  The claims related to communications the Fronts allegedly received from Credit Acceptance after their debt under the two retail installment contracts was in arrears.  Each complaint set forth four causes of action: (1) violations of the West Virginia Consumer Credit and Protection Act (hereinafter "the WVCCPA"); (2) negligence; (3) intentional infliction of emotional distress; and (4) invasion of privacy.  In each case, Credit Acceptance filed a motion to compel arbitration and dismiss, or, in the alternative, to stay the action pending arbitration.  The circuit court consolidated the two cases and ultimately denied Credit Acceptance's motions.  The circuit court found that the contracts were not procedurally unconscionable at the time of their formation, but the subsequent unavailability of one of the selected arbitration forums materially changed the contracts and rendered them procedurally unconscionable.  The court additionally found that

4

the unavailability of one of the selected forums rendered the contracts substantively unconscionable. Finally, the circuit court found that the arbitration agreements violated the Fronts' fundamental right under the West Virginia Constitution to use the court system to seek justice and violated the WVCCPA, which the circuit court interpreted as prohibiting a consumer from waiving the right to a jury trial. The court designated the order as a "final order." It is from this order that Credit Acceptance appeals.

### B.  Shrewsbury Plaintiff

Ocie Shrewsbury and Virgil Shrewsbury[5] (hereinafter collectively "the Shrewsburies") purchased a 2000 Ford Expedition from Greg Lilly Auto Sales, Inc. (hereinafter "Lilly Auto"), on July 11, 2010.  In connection with this purchase, the Shrewsburies executed a retail installment contract and security agreement with Lilly Auto. Lilly Auto then assigned all its rights, title, and interest in the contract and the vehicle to Credit Acceptance, who financed the purchase.  The retail installment contract executed by the Shrewsburies in connection with their vehicle purchase contained an arbitration clause using the same language as that quoted above from the 2005 Front contract.  Notwithstanding the fact that the NAF was no longer available to arbitrate any dispute that arose under the contract, and the AAA was available only on a limited basis,[6] the contract nevertheless

---

[5]Virgil Shrewsbury is not a party to this action.

[6]For an explanation of the unavailability of the NAF and the AAA, see *supra*
(continued...)

5

designated those two organizations as arbitrators of any disputes in the same manner as those organizations had been designated in the Credit Acceptance/Front contracts.

On May 17, 2011, Ocie Shrewsbury (hereinafter "Ms. Shrewsbury") filed a civil action against Credit Acceptance in the Circuit Court of Raleigh County alleging: (1) violations of the WVCCPA; (2) negligence; (3) intentional infliction of emotional distress; and (4) invasion of privacy related to communications she allegedly received from Credit Acceptance after her debt under the retail installment contract was in arrears. Credit Acceptance then filed a motion to compel arbitration or, in the alternative, to stay the action pending arbitration. The circuit court ultimately denied the motion finding the arbitration agreement was not enforceable. Similar to the circuit court's order in the Front case, the circuit court found that the contract was not procedurally unconscionable insofar as "it provided an adequate means for the Plaintiff to opt out." However, the circuit court further observed that the unavailability of the selected arbitration forums materially changed the contract such that there was no meeting of the minds. Therefore, the circuit court concluded that the contract was unenforceable "as it exists today." The circuit court additionally found that the unavailability of the selected forums materially altered the terms of the contract and rendered the contract substantively unconscionable. Finally, the circuit court found the

---

[6](...continued)
Section I.A. titled "Front Plaintiffs."

arbitration agreement was unenforceable in that it essentially eliminated Ms. Shrewsbury's constitutional right to file suit. It is from this order that Credit Acceptance appeals.

## II.

### STANDARD OF REVIEW

Before we reiterate the proper standard for our review of these consolidated cases, we first consider whether these appeals are appropriate. These two appeals are before this Court from circuit court orders that denied motions to dismiss and to compel arbitration. Thus, these consolidated cases seek this Court's review of interlocutory orders.

> "[O]rdinarily the denial of a motion to dismiss is an interlocutory order and, therefore, is not immediately appealable. *See, e.g.*, Syl. pt. 2, *State ex rel. Arrow Concrete Co. v. Hill*, 194 W. Va. 239, 460 S.E.2d 54 (1995) ("Ordinarily the denial of a motion for failure to state a claim upon which relief can be granted made pursuant to West Virginia Rules of Civil Procedure 12(b)(6) is interlocutory and is, therefore, not immediately appealable."). *See also Hutchison v. City of Huntington*, 198 W. Va. 139, 147, 479 S.E.2d 649, 657 (1996) (indicating that this Court rarely addresses a circuit court's denial of a motion to dismiss since such an order is interlocutory).

*Ewing v. Board of Educ. of Cnty. of Summers*, 202 W. Va. 228, 235, 503 S.E.2d 541, 548 (1998). Typically, interlocutory orders are not subject to this Court's appellate jurisdiction. *See Coleman v. Sopher*, 194 W. Va. 90, 94, 459 S.E.2d 367, 371 (1995) ("The usual prerequisite for our appellate jurisdiction is a final judgment, final in respect that it ends the case."). This "rule of finality" is not an absolute rule. Rather, there is a "narrow category

7

of orders that are subject to permissible interlocutory appeal." *Robinson v. Pack*, 223 W. Va. 828, 831, 679 S.E.2d 660, 663 (2009). The *Robinson* Court explained that,

> [o]bjections to allowing an appeal from an interlocutory order are typically rooted in the need for finality. The provisions of West Virginia Code § 58-5-1 (2005) establish that appeals may be taken in civil actions from "a final judgment of any circuit court or from an order of any circuit court constituting a final judgment." *Id.* Justice Cleckley elucidated in *James M.B. v. Carolyn M.*, 193 W. Va. 289, 456 S.E.2d 16 (1995), that "[t]his rule, commonly referred to as the 'rule of finality,' is designed to prohibit 'piecemeal appellate review of trial court decisions which do not terminate the litigation[.]'" 193 W. Va. at 292, 456 S.E.2d at 19 (quoting *U.S. v. Hollywood Motor Car Co.*, 458 U.S. 263, 265, 102 S. Ct. 3081, 73 L. Ed. 2d 754 (1982)). Exceptions to the rule of finality include "interlocutory orders which are made appealable by statute or by the West Virginia Rules of Civil Procedure, or . . . [which] fall within a jurisprudential exception" such as the "collateral order" doctrine. *James M.B.*, 193 W. Va. at 292–93, 456 S.E.2d at 19–20; *accord Adkins v. Capehart*, 202 W. Va. 460, 463, 504 S.E.2d 923, 926 (1998) (recognizing prohibition matters, certified questions, Rule 54(b) judgment orders, and "collateral order" doctrine as exceptions to rule of finality).

223 W. Va. at 832, 679 S.E.2d at 664 (footnote omitted). *See also C & O Motors, Inc. v. West Virginia Paving, Inc.*, 223 W. Va. 469, 475, 677 S.E.2d 905, 911 (2009) ("In addition to the 'ministerial' acts exception, this Court has recognized a limited number of other exceptions to the rule of finality. Our cases have pointed out that we may address specific issues decided by an interlocutory order under the collateral order doctrine or 'by writs of prohibition, certified questions, or by judgments rendered under Rule 54(b) of the West Virginia Rules of Civil Procedure.'" (quoting *James M.B.*, 193 W. Va. at 292 n.3, 456 S.E.2d

8

at 19 n.3)). The exception referred to as the "collateral order" doctrine, which was established by the United States Supreme Court in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S. Ct. 1221, 93 L. Ed. 1528 (1949), may be applied to allow appeal of an interlocutory order when three factors are met: "An interlocutory order would be subject to appeal under [the collateral order] doctrine if it (1) conclusively determines the disputed controversy, (2) resolves an important issue completely separate from the merits of the action, and (3) is effectively unreviewable on appeal from a final judgment." *Durm v. Heck's, Inc.*, 184 W. Va. 562, 566 n.2, 401 S.E.2d 908, 912 n.2 (1991) (internal quotations and citation omitted). *See also Robinson v. Pack*, 223 W. Va. 828, 679 S.E.2d 660 (applying three-part collateral order doctrine to circuit court's denial of summary judgment on issue of qualified immunity and finding order immediately appealable).

Applying the collateral order doctrine, the *Robinson* Court ultimately held that "[a] circuit court's denial of summary judgment that is predicated on qualified immunity is an interlocutory ruling which is subject to immediate appeal under the 'collateral order' doctrine." Syl. pt. 2, *id*. While *Robinson* involved a denial of immunity in the form of an order denying summary judgment, this Court has applied *Robinson* to a qualified immunity decision made in the form of a denial of a motion to dismiss. *See Jarvis v. West Virginia State Police*, 227 W. Va. 472, 711 S.E.2d 542 (2010).

9

In concluding that the order denying the motion to dismiss was immediately appealable under the collateral order doctrine, the *Jarvis* Court adopted the rationale expressed in *Robinson*. In this respect, the *Robinson* Court explained that,

> [w]ith regard to the first factor of [the *Cohen* collateral order doctrine test], which requires that the ruling at issue must be conclusive, "the [trial] court's denial of summary judgment [on the issue of qualified immunity] finally and conclusively determines the defendant's claim of right not to *stand trial* on the plaintiff's allegations." [*Mitchell v. Forsyth*, 472 U.S. 511, 527, 105 S. Ct. 2806, 2816, 86 L. Ed.2d 411 (1985)]. Because a ruling denying the availability of immunity fully resolves the issue of a litigant's obligation to participate in the litigation, the first factor of Cohen is easily met. As to the second factor[,] which focuses on whether the immunity ruling resolves significant issues separate from the merits, there is little question that the "claim of immunity is conceptually distinct from the merits of the plaintiff's claim that his [or her] rights have been violated." *Id.* at 527–28, 105 S. Ct. [at 2816, 86 L. Ed.2d 411].
>
> The final factor of the *Cohen* test requires us to consider whether a qualified immunity ruling is "effectively unreviewable" at the appeal stage. Postponing review of a ruling denying immunity to the post-trial stage is fruitless, as the United States Supreme Court reasoned in *Mitchell*, because the underlying objective in any immunity determination (absolute or qualified) is immunity from suit. 472 U.S. at 526-27, 105 S. Ct. 2806; *see also Gray–Hopkins v. Prince George's County, Md.*, 309 F.3d 224, 229 (4th Cir. 2002) ("Because qualified immunity is an immunity from having to litigate, as contrasted with an immunity from liability, it is effectively lost if a case is erroneously permitted to go to trial.") (omitting internal citation); *Jenkins v. Medford*, 119 F.3d 1156, 1159 (4th Cir. 1997) (observing that denial of qualified immunity defense "subjects the [government] official to the burdens of pretrial matters" and opining that "some of the rights inherent in a qualified immunity defense are [consequently] lost"). Traditional appellate review of a qualified immunity ruling

10

cannot achieve the intended goal of an immunity ruling: "the right not to be subject to the burden of trial." *Hutchison* [*v. City of Huntington*, 198 W. Va. 139, 148, 479 S.E.2d 649, 658 (1996)]. As a result, the third factor of *Cohen* is easily met.

*Robinson*, 223 W. Va. at 832-33, 679 S.E.2d at 664-65 (concluding that "[a]pplication of the

*Cohen* test demonstrates that a circuit court's denial of summary judgment that is predicated

on qualified immunity is an interlocutory ruling which is subject to immediate appeal under

the 'collateral order' doctrine.").

Following the rationale expressed by the *Robinson* Court, we will analyze an

order compelling arbitration under the collateral order doctrine to ascertain if such an order

is among that limited class of interlocutory orders that is immediately appealable.[7]

---

[7]In *McGraw v. American Tobacco Co.*, this Court addressed the issue of whether an order *granting* a motion to compel arbitration was immediately appealable and held:

> A circuit court order *compelling arbitration* is not subject to direct appellate review prior to the dismissal of the circuit court action unless the order compelling arbitration otherwise complies with the requirements of West Virginia Code § 58–5–1 (1998) and Rule 54(b) of the *West Virginia Rules of Civil Procedure*. A party seeking this Court's review of a circuit court order compelling arbitration prior to entry of a final order which complies with the requirements of West Virginia Code § 58-5-1 (1998) and Rule 54(b) of the *West Virginia Rules of Civil Procedure* must do so in an original jurisdiction proceeding seeking a writ of prohibition.

Syl. pt. 1, *McGraw*, 224 W. Va. 211, 681 S.E.2d 96 (2009) (first emphasis added). Thus,
(continued...)

As to the first factor in the collateral order test, that the ruling at issue "conclusively determines the disputed controversy," *Durm*, 184 W. Va. at 566 n.2, 401 S.E.2d at 912 n.2, we find that a circuit court's ruling that refuses to compel arbitration is conclusive as to the disputed controversy of whether the parties are required to arbitrate. By

---

[7](...continued)

under *McGraw*, an interlocutory order *compelling* arbitration is not subject to direct appeal unless certain conditions are met. Insofar as the *McGraw* opinion addressed an order *compelling arbitration*, as opposed to an order *refusing to compel arbitration*, it is not applicable to the instant proceeding. The practice of denying appeals of orders compelling arbitration absent a final order while allowing direct appeals of orders *refusing to compel* arbitration is consistent with how many other courts have treated appeals of arbitration decisions under the FAA. *See McGraw*, 224 W. Va. at 220, 681 S.E.2d at 105 ("Section 16 of the FAA governs appellate review of motions to compel arbitration, permitting it in some circumstances, while denying it in other[s]. 9 U.S.C. § 16 (1990)."). *Accord Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, No. 12-1170, 2013 WL 2302324, at *12 (3d Cir. May 28, 2013) ("We have jurisdiction to review a district court's *denial* of a motion to compel arbitration under 9 U.S.C. § 16[(a)](1)(B)." (emphasis added)); *Adams v. Monumental Gen. Cas. Co.*, 541 F.3d 1276, 1277 (11th Cir. 2008) ("We have no jurisdiction over this appeal because the district court *compelled arbitration*. 9 U.S.C. § 16(b)(2). Section 16 governs the appealability of *interlocutory orders* regarding arbitration, *ConArt, Inc. v. Hellmuth, Obata + Kassabaum, Inc.*, 504 F.3d 1208, 1210 (11th Cir.2007), and subsection (b)(2) states that 'an appeal may not be taken from an interlocutory order . . . directing arbitration to proceed,' 9 U.S.C. § 16(b)(2)."); *Augustea Impb Et Salvataggi v. Mitsubishi Corp.*, 126 F.3d 95, 99 (2d Cir. 1997) ("Section 16(a)(1)(C)'s language provides that a party may appeal from a district court order denying a motion to compel arbitration pursuant to 9 U.S.C. § 206, while under section 16(b)(2) and (3) a party cannot appeal an order compelling arbitration."). *See also* David D. Siegel, Practice Commentary to 9 U.S.C.A. § 16 (West 1990) ("Subdivision (a) of § 16 enumerates the situations in which an immediate appeal from an arbitrability determination is allowed. It applies for the most part to determinations against arbitration. Subdivision (b) enumerates the situations in which an appeal is not to be allowed, and all of them are decisions in favor of arbitration. In trumpeting this pro-arbitration view, however, note that subdivision (b) addresses only an 'interlocutory' order. Hence a pro-arbitration decision that amounts to a final disposition in its particular judicial context remains appealable . . . .").

denying such a motion, the circuit court thereby concludes that a case will proceed to trial. Such a ruling forecloses arbitration of the underlying claims asserted and, therefore, conclusively resolves the issue of arbitration.

The second factor of the collateral order test asks whether the order "resolves an important issue completely separate from the merits of the action," *Durm*, 184 W. Va. at 566 n.2, 401 S.E.2d at 912 n.2. We find there to be little doubt that the issue of arbitration is completely separate from the merits of the underlying claims in a given action. Furthermore, resolution of the arbitration question is important in that it resolves the foundational question of the manner in which the parties will resolve their dispute, either by arbitration or through the courts.

The final consideration in the collateral order test is whether the order "is effectively unreviewable on appeal from a final judgment." *Durm*, 184 W. Va. at 566 n.2, 401 S.E.2d at 912 n.2. We find that an order refusing to compel arbitration is effectively unreviewable on appeal. The result of such an order is litigation. The purpose of arbitration is to avoid litigation in favor of a quicker and less costly method of dispute resolution. *See Raymond James Fin. Servs., Inc. v. Bishop*, 596 F.3d 183, 190 (4th Cir. 2010) (commenting that "'the purpose of having arbitration at all [is] the quick resolution of disputes and the avoidance of the expense and delay associated with litigation'" (quoting *Apex Plumbing*

13

*Supply, Inc. v. U.S. Supply Co., Inc*., 142 F.3d 188, 193 (4th Cir.1998))); *Grayiel v. Appalachian Energy Partners 2001-D, LLP*, 230 W. Va. 91, __, 736 S.E.2d 91, 101 (2012) (identifying one purpose of arbitration as "providing a suitable alternative forum for plaintiff's claims"); *Board of Ed. of Berkeley County v. W. Harley Miller, Inc*., 160 W. Va. 473, 479, 236 S.E.2d 439, 443 (1977) (describing the purpose of arbitration as "just, speedy, economical conflict resolution"). Thus, a party who is required to wait until the conclusion of litigation to appeal the denial of arbitration has already borne the financial and temporal cost of such litigation and has, therefore, effectively lost, irreparably, the right to arbitration.

Having found that an order denying a motion to compel arbitration fulfils the requirements of the collateral order doctrine, we now hold that an order denying a motion to compel arbitration is an interlocutory ruling which is subject to immediate appeal under the collateral order doctrine. Applying this holding to the instant case, we find the appeals are proper.

When an appeal from an order denying a motion dismiss is properly before this Court, our review is *de novo*. *See, e.g.,* Syl. pt. 4, *Ewing*, 202 W. Va. 228, 503 S.E.2d 541 ("When a party, as part of an appeal from a final judgment, assigns as error a circuit court's denial of a motion to dismiss, the circuit court's disposition of the motion to dismiss will be

14

reviewed *de novo*.").  Accordingly, we proceed to conduct our *de novo* review of the issues raised in these consolidated appeals.

### III.

### DISCUSSION

Credit Acceptance asserts that two errors warrant reversing the circuit courts' orders denying its motions to compel arbitration in these cases.  First, Credit Acceptance argues that the circuit courts erred in finding the contracts to be unconscionable based upon the unavailability of arbitration forums named in the agreements.  Second, Credit Acceptance argues that the circuit courts erroneously concluded that the arbitration agreements were unenforceable because the debtors therein waived their rights to a jury trial.  We address these issues separately below.

#### A.  *Unconscionability*

On the topic of contractual unconscionability, this Court previously has held that

> "[a] contract term is unenforceable if it is both procedurally and substantively unconscionable. However, both need not be present to the same degree. Courts should apply a 'sliding scale' in making this determination:  the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the clause is unenforceable, and vice versa." Syllabus Point 20, *Brown v. Genesis Healthcare Corp.*, 228

15

W. Va. 646, 724 S.E.2d 250 (2011)[, *overruled in part on other grounds by Marmet Health Care Center, Inc. v. Brown*, ___ U.S. ___, 132 S. Ct. 1201, 182 L. Ed. 2d 42 (2012) (per curiam).]"

Syl. pt. 9, *Brown v. Genesis Healthcare Corp.*, 729 S.E.2d 217, 221 (2012).[8]

The circuit court orders in each of the two consolidated appeals concluded that the arbitration contracts were both procedurally and substantively unconscionable based upon the unavailability of one or both of the two named arbitration forums. Thus, we will address both theories of unconscionability.

**1. Procedural Unconscionability.** The circuit court's order in the Front case, Appeal No. 11-1646, found the contract to be procedurally unconscionable as follows:

> The court is apprised of the fact that the original contract is not procedurally unconscionable, in as much [sic] as it provided an adequate means for the plaintiffs to opt out of it; was adequately brought to the attention of the plaintiffs; and, provided two separate arbitration forums. However, the fact that one of the specific arbitration forums has been eliminated,

---

[8]The author of this opinion did not participate in the decision in *Brown ex rel. Brown v. Genesis Healthcare Corp.*, 228 W. Va. 646, 724 S.E.2d 250 (2011), *overruled in part on other grounds by Marmet Health Care Center, Inc. v. Brown*, ___ U.S. ___, 132 S. Ct. 1201, 182 L. Ed. 2d 42 (2012). Separate from the majority, the author of this opinion independently questions the need for establishing both substantive and procedural unconscionability to find a contractual term is unenforceable. However, insofar as this opinion ultimately reaches the conclusion that the contractual terms at issue were not unconscionable, and the parties have not challenged this Court's prior holding, the consolidated cases *sub judice* do not present the proper opportunity for such an analysis.

materially changing the terms of the contract, causes the court to determine that there was no meeting of the minds to create the contract as it exists today.

The circuit court's order in the Shrewsbury case, Appeal No. 12-0545, concluded that

the contract in this matter is not procedurally unconscionable in that it provided an adequate means for the Plaintiff to opt out. Further, the arbitration agreement was clearly brought to the attention of the Plaintiff in the contract, and provided for arbitration by two separate forums, NAF and AAA. However, neither of the specified forums currently accepts creditor arbitration agreements requests. Because the specific arbitration forums have been eliminated, there has been a material change in the terms of the contract. The Court has therefore determined that there was no meeting of the minds to create the contract as it exists today, and the arbitration agreement is unenforceable.

Notably, both of the orders quoted above concluded that the contracts at issue were not procedurally unconscionable at the time of their execution, but were rendered procedurally unconscionable by subsequent events. In Syllabus point 10 of *Brown v. Genesis Healthcare Corp.*, 229 W. Va. 382, 729 S.E.2d 217 (2012) (hereinafter referred to as "*Brown II*"), this Court explained that

"[p]rocedural unconscionability is concerned with inequities, improprieties, or unfairness *in the bargaining process and formation of the contract*. Procedural unconscionability involves a variety of inadequacies that results in the lack of a real and voluntary meeting of the minds of the parties, considering all the circumstances surrounding the transaction.

17

These inadequacies include, but are not limited to, the age, literacy, or lack of sophistication of a party; hidden or unduly complex contract terms; the adhesive nature of the contract; and the manner and setting in which the contract was formed, including whether each party had a reasonable opportunity to understand the terms of the contract." Syllabus Point 17, *Brown v. Genesis Healthcare Corp.*, 228 W. Va. 646, 724 S.E.2d 250 (2011)[, *overruled in part on other grounds by Marmet Health Care Center, Inc. v. Brown*, ___ U.S. ___, 132 S. Ct. 1201, 182 L. Ed. 2d 42 (2012) (per curiam).]"

(Emphasis added). As the *Brown II* Court observed, procedural unconscionability relates to unconscionability at the time a contract is formed "in the bargaining process and formation of the contract." *Id.* Because this Court's review must focus on the contract at the time it was agreed upon, the circuit courts' conclusions that the contracts could be rendered procedurally unconscionable by subsequent events is erroneous.[9]

**2. Substantive Unconscionability.** The circuit court's order in the Front case, Appeal No. 11-1646, stated, with respect to substantive unconscionability, that

[i]n examining the matter of substantive unconscionability, the court finds that the elimination of an arbitration forum is a substantive change in the terms of the contract. Public policy favors a plaintiff having his day in court

---

[9]Ms. Shrewsbury argues that the NAF consent decree and AAA moratorium were already in place when her contract was executed naming the foregoing organizations as arbitrators. Thus, she contends that her contract was procedurally unconscionable at the time of its formation. We disagree. Ms. Shrewsbury fails to allege that Credit Acceptance named these forums in the contract for the purpose of achieving an unfair advantage, nor does she direct this Court to any evidence in the appendix record that would support such a theory. Therefore, we reject this argument.

18

should the terms of a contract be materially altered after the execution of said contract.

The circuit court's order in the Shrewsbury case, Appeal No. 12-0545, likewise stated that,

[i]n examining substantive unconscionability, the court finds that the elimination of the arbitration forums is a material change in the terms of the contract. Public policy favors a plaintiff having his day in court should the terms of a contract be materially altered after the execution of the contract. Further, this court is reluctant to uphold an arbitration agreement which essentially eliminates a party's constitutional right to file suit, especially when the agreement no longer exists in its original form. Although the right to assert one's claim in the court system may be subject to a legally enforceable waiver, courts indulge every reasonable presumption against waiver of a fundamental constitutional right and will not presume acquiescence in the loss of such fundamental right. . . . For these reasons, the Court finds that the arbitration agreement in this case is unenforceable.

(Internal citations and quotations omitted).

This Court has clarified that,

"[s]ubstantive unconscionability involves unfairness in the contract itself and whether a contract term is one-sided and will have an overly harsh effect on the disadvantaged party. The factors to be weighed in assessing substantive unconscionability vary with the content of the agreement. Generally, courts should consider the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and public policy concerns." Syllabus Point 19, *Brown v. Genesis Healthcare Corp.*, 228 W. Va. 646, 724

19

S.E.2d 250 (2011)[, *overruled in part on other grounds by Marmet Health Care Center, Inc. v. Brown*, ___ U.S. ___, 132 S. Ct. 1201, 182 L. Ed. 2d 42 (2012) (per curiam).]"

Syl. pt. 12, *Brown II*, 229 W. Va. 382, 729 S.E.2d 217. The sole basis for the conclusions of the circuit courts that the Front and Shrewsbury contracts were substantively unconscionable was the unavailability of one or both of the arbitration forums designated in the agreement to govern arbitration between the parties to the respective contracts. Insofar as the determination of substantive unconscionability instructs a reviewing court to examine the general fairness of the contract through factors such as "the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and public policy concerns," we find this analysis simply is not applicable to the determination of whether the unavailability of a selected arbitration forum renders a contract unenforceable. There is nothing inherently unreasonable about a contract term in which the parties choose to select one or more forums to conduct arbitration of disputes that may arise between said parties. The subsequent unavailability of a selected forum does not automatically render the contract unconscionable. Rather, courts have developed other tests, which will be discussed below, for determining whether the unavailability of a chosen arbitration forum renders a contract unenforceable. Accordingly, we find that both of the

20

circuit courts erred in finding the Front and Shrewsbury contracts to be substantively unconscionable based upon the unavailability of a chosen arbitration forum.[10]

## B. Forum Availability

The essence of the unconscionability arguments made to this Court in these consolidated appeals is more properly framed as challenging whether the unavailability of a chosen arbitration forum renders an arbitration agreement unenforceable. We begin our analysis with the FAA, insofar as the arbitration agreements at issue all stated that they are governed thereby. Section 5 of the FAA requires a court to designate an arbitrator under certain circumstances:

> If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and

---

[10]Ms. Shrewsbury additionally argues that her contract was substantively unconscionable because the arbitration clause was buried on the back of a densely-printed form. However, this argument was neither raised to or addressed by the circuit court. Accordingly, the issue is not properly before this Court for our review. *See* Syl. pt. 2, *Trent v. Cook*, 198 W. Va. 601, 482 S.E.2d 218 (1996) ("'[T]he Supreme Court of Appeals is limited in its authority to resolve assignments of nonjurisdictional errors to a consideration of those matters passed upon by the court below and fairly arising upon the portions of the record designated for appellate review.' Syl. Pt. 6, in part, *Parker v. Knowlton Const. Co., Inc.*, 158 W. Va. 314, 210 S.E.2d 918 (1975)."), *overruled on other grounds by Gibson v. Northfield Ins. Co.*, 219 W. Va. 40, 631 S.E.2d 598 (2005).

appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator.

9 U.S.C. § 5. Federal courts have concluded that section 5 of the FAA may be applied when a chosen arbitrator is unavailable. *See Khan v. Dell Inc.*, 669 F.3d 350, 354 (3d Cir. 2012) ("[S]ection 5 of the FAA . . . provides a mechanism for substituting an arbitrator when the designated arbitrator is unavailable."); *Brown v. ITT Consumer Fin. Corp.*, 211 F.3d 1217, 1222 (11th Cir. 2000) ("Where the chosen forum is unavailable, however, or has failed for some reason, § 5 applies and a substitute arbitrator may be named."); *Astra Footwear Indus. v. Harwyn Int'l, Inc.*, 442 F. Supp. 907, 910 (S.D.N.Y.), *aff'd*, 578 F.2d 1366 (2d Cir.1978) ("The Court finds that 9 U.S.C. § 5 was drafted to provide a solution to the problem caused when the arbitrator selected by the parties cannot or will not perform.").

However, section 5 of the FAA does not warrant the automatic appointment of a substitute arbitrator when the chosen arbitrator is unavailable. A method for applying section 5 of the FAA under such circumstances was established by the Eleventh Circuit Court of Appeals in *Brown v. ITT Consumer Financial Corp.*, 211 F.3d 1217. More recently, the *Brown* method was summarized by the Third Circuit Court of Appeals as follows:

> In determining the applicability of Section 5 of the FAA when an arbitrator is unavailable, courts have focused on whether the designation of the arbitrator was integral to the arbitration provision or was merely an ancillary consideration. . . . [O]nly

if the choice of forum is an integral part of the agreement to arbitrate, rather than an ancillary logistical concern, will the failure of the chosen forum preclude arbitration. . . . In other words, a court will decline to appoint a substitute arbitrator, as provided in the FAA, only if the parties' choice of forum is so central to the arbitration agreement that the unavailability of that arbitrator brings the agreement to an end. . . . In this light, the parties must have unambiguously expressed their intent not to arbitrate their disputes in the event that the designated arbitral forum is unavailable.

*Kahn*, 669 F.3d at 354 (quotations and citations omitted). This formulation of the application of section 5 of the FAA is the majority rule.[11] *See Ranzy v. Tijerina*, 393 Fed. Appx. 174, 176 (5th Cir. 2010) ("Section 5 [of the FAA] does not, however, permit a district court to circumvent the parties' designation of an exclusive arbitration forum when the choice of that

---

[11]*See Diversicare Leasing Corp. v. Nowlin*, No. 11-CV-1037, 2011 WL 5827208, at \*5 (W.D. Ark. Nov. 18, 2011) ("The majority of courts who have addressed whether a substitute can be appointed pursuant to Section 5 [when the specifically named forum in an arbitration agreement cannot hear the parties' claims] have utilized the approach set out in *Brown v. ITT Consumer Financial Corp.*, 211 F.3d 1217 (11th Cir.2000)). *See also Rivera v. American Gen. Fin. Servs., Inc.*, 259 P.3d 803, 812 (N.M. 2011) (observing "[m]any jurisdictions have . . . concluded that *Brown's* "integral" versus "ancillary logistical concern" test is a proper way to determine whether a court may appoint a substitute arbitration provider.").

To the contrary, at least one federal court has found that section 5 of the FAA never applies to appoint a substitute for a named arbitration forum that is unavailable because the unavailability of a selected forum does not fall within the meaning of the term "lapse" as used in section 5. *See In re Salomon Inc. Shareholders' Derivative Litig. 91 Civ. 5500 (RRP),* 68 F.3d 554, 560 (2d Cir. 1995) (concluding that "[s]ection 5 applies when there is '*a lapse in the naming of an arbitrator . . . or in filling a vacancy.*' 9 U.S.C. § 5 (emphasis added). We believe that the 'lapse' referred to in § 5 means 'a lapse in time in the naming of the' arbitrator or in the filling of a vacancy on a panel of arbitrators, *Pacific Reins. Mgt. Corp.*[ *v. Ohio Reins. Corp*], 814 F.2d[ 1324,] 1327 [(9th Cir.1987)], or some other mechanical breakdown in the arbitrator selection process[.]").

forum is an integral part of the agreement to arbitrate, rather than an ancillary logistical concern." (quotations and citations omitted)); *Reddam v. KPMG LLP*, 457 F.3d 1054, 1059–60 (9th Cir. 2006) ("When a court asks whether a choice of forum is integral, it asks whether the whole arbitration agreement becomes unenforceable if the chosen arbitrator cannot or will not act."), *overruled on other grounds as recognized in Atlantic Nat'l Trust LLC v. Mt. Hawley Ins. Co.*, 621 F.3d 931, 940 (9th Cir. 2010); *Brown v. ITT Consumer Fin. Corp.*, 211 F.3d at 1222 ("Where the chosen forum is unavailable . . . or has failed for some reason, § 5 applies and a substitute arbitrator may be named. . . . Only if the choice of forum is an integral part of the agreement to arbitrate, rather than an ancillary logistical concern will the failure of the chosen forum preclude arbitration." (quotations and citations omitted)); *Green v. U.S. Cash Advance Illinois, LLC*, No. 12-C-8079, 2013 WL 317046, at *3 (N.D. Ill. Jan. 25, 2013) ("A substitute arbitrator may not be appointed, however, if the provision naming the arbitrator was an integral part of the agreement. Thus, the court must decide before applying § 5 whether the chosen arbitration forum is integral to the agreement or merely an ancillary logistical concern." (citations and quotations omitted)); *Klima v. Evangelical Lutheran Good Samaritan Soc'*y, No. 10-CV-1390-JAR-JPO, 2011 WL 5412216, at *3 (D. Kan. Nov. 8, 2011) (following majority based on finding "the approach taken by the Fifth, Ninth, and Eleventh Circuits consistent with both the purpose behind the FAA and general principles of contract law because it treats arbitration agreements like contracts and looks to the parties' intent"); *Adler v. Dell Inc*., No. 08-CV-13170, 2009 WL

24

4580739, at *2 (E.D. Mich. Dec. 3, 2009) ("As a general rule, when the arbitrator named in the arbitration agreement cannot or will not arbitrate the dispute, the court does not void the arbitration agreement. Instead, it appoints a different arbitrator, as provided in [§ 5 of] the Federal Arbitration Act[.] . . . The exception to this rule occurs when it is clear that the failed term is not an ancillary logistical concern but rather is as important a consideration as the agreement to arbitrate itself." (internal quotations, citations, and footnote omitted)); *McGuire, Cornwell & Blakey v. Grider*, 771 F. Supp. 319, 320 (D. Colo. 1991) ("[A]s a general rule, where the arbitrator named in the arbitration agreement cannot or will not arbitrate the dispute, a court does not void the agreement but instead appoints a different arbitrator. . . . There is an exception to this rule. Where it is clear that the failed term is not an ancillary logistical concern but rather is as important a consideration as the agreement to arbitrate itself, a court will not sever the failed term from the rest of the agreement and the entire arbitration provision will fail." (internal quotations and citations omitted)); *Carr v. Gateway, Inc*., 241 Ill. 2d 15, 26, 944 N.E.2d 327, 333 (2011) ("[W]e agree with those federal courts that have held section 5 of the Act may be applied to name a substitute arbitrator where the parties' designated arbitral forum fails, unless the designation of the arbitral forum is integral to the parties' agreement to arbitrate."); *Rivera v. American Gen. Fin. Servs., Inc*., 259 P.3d 803, 812 (N.M. 2011) ("We agree with the jurisdictions that have focused on the parties' intent, as expressed in the contract, to determine whether § 5 of the FAA permits a court to substitute a different arbitration provider. The 'integral' or 'ancillary

25

logistical concern' test articulated by the Eleventh Circuit in *Brown*, 211 F.3d at 1222, is consistent with New Mexico's general principles of contract law in requiring courts to give effect to the intent of the parties." (second internal quotation and citation omitted)).

The majority rule is founded on the "liberal federal policy in favor of arbitration articulated in the FAA." *Kahn*, 669 F.3d at 356 (internal quotations omitted). The rationale for the rule has been explained as follows:

> When the reference to arbitration rules or an arbitration forum is merely "an ancillary or logistical concern," the application of Section 5 to appoint a different arbitrator does not do violence to the intentions of the parties. By contrast, when the choice of arbitration forum was integral to the agreement, such that the parties would not have agreed upon arbitration absent the selected forum, application of Section 5 to appoint a substitute arbitrator is more problematical.

*Jones v. GGNSC Pierre LLC*, 684 F. Supp. 2d 1161, 1166 (D.S.D. 2010).

We are persuaded by the foregoing authority, and, therefore, we now expressly hold that where an arbitration agreement names a forum for arbitration that is unavailable or has failed for some reason, a court may appoint a substitute forum pursuant to section 5 of the Federal Arbitration Act, 9 U.S.C. § 5 (1947) (2006 ed.), only if the choice of forum is an ancillary logistical concern. Where the choice of forum is an integral part of the agreement to arbitrate, the failure of the chosen forum will render the arbitration agreement unenforceable.

26

Turning to the facts of the instant consolidated cases, the three arbitration agreements involved in this appeal contained the following provision: "You or we may elect to arbitrate under the rules and procedures of either the National Arbitration Forum or the American Arbitration Association."  As we explained in the "Factual and Procedural History" section of this opinion, Section I.A., *supra*, as a result of a suit filed by the State of Minnesota, the NAF entered into a consent decree forbidding it from conducting consumer arbitration.  *See CompuCredit Corp. v. Greenwood,* ___ U.S. at ___ n.2, 132 S. Ct. at 677 n.2, 181 L. Ed. 2d. 586 ("In 2009, after the Attorney General of Minnesota filed an action alleging that NAF had engaged in numerous violations of consumer-protection laws, NAF entered into a consent decree barring it from handling consumer arbitrations.").  Thus, the NAF is unavailable to arbitrate the claims asserted by the Fronts and Ms. Shrewsbury against Credit Acceptance.

Shortly after the NAF was barred from handling consumer arbitrations, the "AAA issued a moratorium on arbitrating cases concerning consumer debt collections *if those cases were brought by the company* and the consumer did not consent to the arbitration." *Montgomery v. Applied Bank*, 848 F. Supp. 2d at 613 (emphasis added).  It is significant that the moratorium issued by the AAA applies only to consumer debt collection cases brought by the company.  Thus, as Credit Acceptance has asserted, because the claims against it were brought by consumers, the Fronts and Ms. Shrewsbury, the AAA remains an

27

available forum to arbitrate those claims. Indeed, during oral argument of this case, counsel for the Fronts and Ms. Shrewsbury rightfully conceded that the AAA remained available to arbitrate his clients' disputes. *See Montgomery*, 848 F. Supp. 2d at 614 ("AAA indicates that it will continue to administer all demands for arbitration filed by consumers against businesses, and all other types of consumer arbitrations." (quotations and citation omitted)). *See also* American Arbitration Association, "Notice on Consumer Debt Collection Arbitrations," available at, http://www.adr.org/cs/groups/governmentandconsumer/documents/document/dgdf/mdey/~edisp/adrstg_012244.pdf ("[T]he AAA's previously announced moratorium on debt collection arbitrations remains in effect. . . . Matters included in this moratorium are: consumer debt collection programs or bulk filings and individual case filings in which the company is the filing party and the consumer has not agreed to arbitrate at the time of the dispute, and the case involves a credit card bill, a telecom bill or a consumer finance matter. *The AAA will continue to administer all demands for arbitration filed by consumers against businesses* as well as all other types of consumer arbitrations." (emphasis added)).

Because one of the arbitration forums named in the arbitration agreements remains available to arbitrate the disputes underlying this appeal, it is not necessary for this Court to conduct an analysis as to whether the forum selection was merely an ancillary logistical concern, or was instead an integral part of the agreement to arbitrate. Due to the

28

availability of a chosen forum, the circuit courts erred in denying Credit Acceptance's motions to compel arbitration. *See, e.g., Montgomery v. Applied Bank*, 848 F. Supp. 2d 609, 613 (finding arbitration agreement not unenforceable on grounds of unavailability of forum, in part, because AAA remained available); *Conroy v. Citibank, N.A.*, No. CV 10–04930 SVW (AJWx), 2011 WL 10503532, at \*6 (C.D. Cal. July 22, 2011) (rejecting argument that arbitration agreement unenforceable due to potential unavailability of forum where AAA remained available); *Smith v. ComputerTraining.com Inc.*, 772 F. Supp. 2d 850, 862 (E.D. Mich. 2011) ("This case is not covered by the moratorium. It does not involve a consumer debt collection, telecom bill, or consumer finance matter. Instead, this case constitutes a claim which would be filed by consumers against a business, which AAA's website explicitly says that it will hear. . . . Plaintiffs can demand arbitration before AAA." (citation omitted)); *In re Pfeiffer*, Bankr. No. 11–13274, 2011 WL 4005504, at \*8 (Bkrtcy. E.D. Pa. Sept. 8, 2011) (finding FAA section 5 inapplicable due to availability of AAA).

### C. Right to a Jury Trial

In the Front case, Appeal No. 11-1646, the circuit court found that the Fronts could not contractually waive their rights under the WVCCPA, stating:

> West Virginia Code § 46A-1-107 prohibits West Virginia consumers from waiving any rights under the West Virginia Consumer Credit and Protection Act (the "Act"). The Act states:
>
> Except as otherwise provided in this chapter, a

29

> consumer may not waive or agree to forgo rights
> or benefits under this chapter or under article
> two-a, chapter forty-six of this code.
>
> The court is of the opinion that a consumer's . . . rights afforded
> under the Act include the right to a jury trial. This right cannot
> be waived by an agreement, especially an agreement which no
> longer exists in its original form.

Similarly, in the Shrewsbury case, Appeal No. 12-0545, the circuit court stated:

> [T]his Court is reluctant to uphold an arbitration agreement
> which essentially eliminates a party's constitutional right to file
> suit . . . . Although the right to assert one's claim in the court
> system may be subject to a legally enforceable waiver, "[c]ourts
> indulge every reasonable presumption against waiver of a
> fundamental constitutional right and will not presume
> acquiescence in the loss of such fundamental right." Syllabus
> Point 2, *State ex rel. May v. Boles*, 149 W. Va. 155, 139 S.E.2d
> 177 (1964).

Credit Acceptance argues that the foregoing rulings were erroneous. We agree.

In Syllabus point 1 of *Brown II*, this Court held:

> Under the Federal Arbitration Act, 9 U.S.C. § 2, a written
> provision to settle by arbitration a controversy arising out of a
> contract that evidences a transaction affecting interstate
> commerce is valid, irrevocable, and enforceable, unless the
> provision is found to be invalid, revocable or unenforceable
> upon a ground that exists at law or in equity for the revocation
> of any contract.

229 W. Va. 382, 729 S.E.2d 217 (citation omitted). Thus, insofar as an arbitration

agreement, by its very nature, requires a party to surrender his or her right to litigate, it may

30

not be invalidated solely upon that ground. *See American Gen. Life & Acc. Ins. Co. v. Wood*, 429 F.3d 83, 91 n.6 (4th Cir. 2005) ("To the extent that Wood argues that any waiver of his constitutional right to access to state courts or trial by jury must be knowing and voluntary, we have already stated that 'the loss of the right to a jury trial is a necessary and fairly obvious consequence of an agreement to arbitrate.' *Snowden v. CheckPoint Check Cashing*, 290 F.3d 631, 638 (4th Cir. 2002) (internal quotations and citations omitted)."); *Lake James Cmty. Volunteer Fire Dep't, Inc. v. Burke Cnty., N.C.*, 149 F.3d 277, 280 (4th Cir. 1998) (commenting "simply because a contract includes the waiver of a constitutional right does not render the contract *per se* unenforceable" and including the right to a jury trial in a list of waivers of rights that have been upheld). *See also Harrington v. Atlantic Sounding Co., Inc.*, 602 F.3d 113, 126 (2d Cir. 2010) (concluding "Harrington's argument that the Agreement was substantively unconscionable because it takes away his right to a trial by jury fails because courts may not rely on the uniqueness of an agreement to arbitrate, which necessarily waives jury trial, as a basis for a state-law holding that enforcement would be unconscionable. . . . It is well-settled that waivers of jury trial are fully enforceable under the FAA," and collecting cases (quotations and citations omitted)).

Furthermore,

> [a] state statute, rule, or common-law doctrine, which targets arbitration provisions for disfavored treatment and which is not usually applied to other types of contract provisions, stands as an obstacle to the accomplishment and execution of

31

the purposes and objectives of the Federal Arbitration Act, 9 U.S.C. § 2, and is preempted.

Syl. pt. 8, *Brown ex rel. Brown v. Genesis Healthcare Corp*., 228 W. Va. 646, 724 S.E.2d 250, 261 (2011), *overruled in part on other grounds by Marmet Health Care Ctr., Inc. v. Brown*, ___ U.S. ___, 132 S. Ct. 1201, 182 L. Ed.2d 42 (2012) (per curiam). Insofar as the circuit courts' rulings single out arbitration for disfavored treatment, such rulings must be rejected. Accordingly, we find that both circuit courts erred in their conclusions that the arbitration agreements were invalid as waiving the right to a jury trial.

## IV.

## CONCLUSION

For the reasons expressed in the body of this opinion, in Appeal No. 11-1646, we reverse the October 20th, 2011, order of the Circuit Court of Raleigh County, in which the Fronts were plaintiffs, and remand the cases consolidated by that court for entry of an order compelling arbitration.

We likewise, for the same reasons, in Appeal No. 12-0545, reverse the March 28, 2012, order of the Circuit Court of Raleigh County, in which Ms. Shrewsbury was the plaintiff, and remand for entry of an order compelling arbitration.

Appeal No. 11-1646, Reversed and Remanded.

Appeal No. 12-0545, Reversed and Remanded.

32