# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**Frontline Asset Strategies, LLC,**
**Petitioner**

**vs)  No. 20-0395** (Raleigh County 18-C-364-D)

**Robert Rutledge and Carol Barclay, on behalf**
**of themselves and others similarly situated,**
**Respondents**

**FILED**
**May 17, 2021**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner, Frontline Asset Strategies, LLC ("Frontline"), by counsel, Joseph K. Merical, filed an interlocutory appeal of the Circuit Court of Raleigh County's order denying its motion to compel arbitration.  Respondents, Robert Rutledge ("Respondent Rutledge") and Carol Barclay ("Respondent Barclay") (collectively "Respondents"), by counsel Patricia M. Kipnis, Jonathan R. Marshall and Steven J. Broadwater, Jr., assert that the circuit court properly denied Petitioner's motion to compel arbitration.

This Court has reviewed the appendix record, the parties' briefs and oral arguments, the applicable law, and all other matters before the Court.  Upon consideration of the standard of review and the applicable law, the Court finds no substantial question of law and no prejudicial error.  For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.

Frontline describes itself as a Minnesota limited liability company that is in the business of collecting debts owed to other entities.  In 2017, Frontline mailed collection letters to Respondents.  With respect to the specific debts at issue, Frontline alleges as follows:

In 2008, Respondent Rutledge entered into a Personal Credit Line Account Agreement with Beneficial West Virginia, Inc. ("Beneficial").  In conjunction with the original transaction with Beneficial, Respondent Rutledge executed an Arbitration Rider on March 3, 2008, which was incorporated by reference as part of the Personal Credit Line Account Agreement.  In the first paragraph of the Arbitration Rider, it provides:

> you agree that either Lender or you may request that any claim, dispute, or controversy …, arising from or relating to this Agreement or the relationships which result from this Agreement, including the validity or the enforceability of this arbitration clause, any part thereof or the entire agreement [], shall be resolved, upon the election of you or us by binding arbitration…

The Arbitration Rider also provides:

1

THE PARTIES ACKNOWLEDGE THAT THEY HAD A RIGHT TO LITIGATE CLAIMS THROUGH A COURT BEFORE A JUDGE OR JURY, BUT WILL NOT HAVE THAT RIGHT IF EITHER PARTY ELECTS ARBITRATION. THE PARTIES HEREBY KNOWINGLY AND VOLUNTARILY WAIVE THEIR RIGHTS TO LITIGATE SUCH CLAIMS IN A COURT BEFORE A JUDGE OR JURY UPON ELECTION OF ARBITRATION BY EITHER PARTY.

According to Frontline, Mr. Rutledge defaulted on his debt[1] and CACH, LLC bought Mr. Rutledge's debt and then hired Frontline to attempt to collect the debt.[2]

Sometime prior to 2017, Respondent Barclay signed up for a credit card account with Credit One Bank and incurred debt from charges on that credit card that Frontline alleges she did not pay. After Respondent Barclay signed up for the Credit One Bank ("Credit One") credit card, she received a Credit One Bank Visa/Mastercard Cardholder Agreement ("Cardholder Agreement"), which provided that if she used her card, she agreed to various terms including, but not limited to, arbitration. By using her credit card, she assented to the terms of the Cardholder Agreement, which included an arbitration clause that prohibits lawsuits, including class action lawsuits, and requires instead the use of arbitration to resolve all disputes. Specifically, the Cardholder Agreement provides:

… EITHER YOU OR WE CAN REQUIRE THAT ANY CONTROVERSY OR DISPUTE BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING.

**Agreement to Arbitrate:**
You and we agree that either you or we may, without the other's consent, require that any controversy or dispute between you and us (all of which are called "Claims"), be submitted to mandatory, binding arbitration. This Arbitration Agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by, and enforceable under, the Federal Arbitration Act

---

[1] In support of its allegation that Respondent Rutledge defaulted on his debt, Frontline references a 2011 letter from Beneficial to Respondent Rutledge indicating that as of April 9, 2011, a payment for his account had not been received. At that time, the total amount due was $339.00.

[2] In support of its allegation that CACH, LLC bought Respondent Rutledge's debt, Frontline references a letter dated September 19, 2017 that it sent Respondent Rutledge informing him that the CACH, LLC is the current creditor to whom his debt is owed.

(the "FAA"), 9 U.S.C. §1 et seq., and (to the extent State law is applicable), the State law governing the Card Agreement.

At some point prior to October 6, 2017, Credit One Bank sold its right, title, and interest in Respondent Barclay's debt to LVNV Funding, LLC ("LVNV"), and LVNV authorized Frontline to serve as its collection agent for Respondent Barclay's debt.[3]

On August 10, 2018, Respondents filed a lawsuit in the Circuit Court of Raleigh County against Frontline seeking to represent themselves and a class of similarly situated individuals with West Virginia addresses to whom Frontline sent collection letters. Respondents alleged that Frontline's debt collection letters violated the West Virginia Consumer Credit and Protection Act. Frontline removed the case to the United States District Court for the Southern District of West Virginia. While the case was pending in federal court, Frontline filed a motion to compel arbitration to which Respondents objected. The case was remanded to the Circuit Court of Raleigh County on December 17, 2019.

On January 6, 2020, Petitioner filed a Motion to Compel Arbitration. Specifically, Frontline moved the circuit court to: (1) strike the class action claims of Respondents; (2) compel Respondents to submit their individual claims to arbitration; and (3) dismiss the underlying civil case or stay the matter pending the outcome of the arbitration. Frontline alleged that it is was entitled to enforce the arbitration provisions that Respondents entered into with their original creditors. Respondents opposed Frontline's motion, arguing that Frontline failed to prove that it was ever assigned the right to arbitrate claims with Respondents. By order entered on March 30, 2020, the Circuit Court of Raleigh County denied Frontline's motion to compel arbitration.

This appeal by Frontline followed.[4]

"Typically, interlocutory orders are not subject to this Court's appellate jurisdiction." *Credit Acceptance Corp. v. Front*, 231 W. Va. 518, 522, 745 S.E.2d 556, 560 (2013). However, this case is properly before this Court because "[a]n order denying a motion to compel arbitration is an interlocutory ruling which is subject to immediate appeal under the collateral order doctrine." Syl. Pt. 1, *Credit Acceptance Corp.*, 231 W. Va. at 519, 745 S.E.2d at 557. "When an appeal from an order denying a motion to dismiss and compel arbitration is properly before this Court, our review is *de novo*." Syl. Pt. 1, *W. Va. CVS Pharm. LLC v. McDowell Pharm., Inc.*, 238 W. Va. 465, 796 S.E.2d 574 (2017).

With these standards in mind, we turn to the parties' arguments.

---

[3] In support of its allegation that Credit One Bank sold its right, title and interest in Respondent Barclay's debt to LVNV, Frontline references the "Declaration of Lauren Savage," who was Frontline's Director of Compliance & Litigation.

[4] We decline to address Frontline's argument regarding equitable estoppel as it was raised for the first time on appeal. *See Zaleski v. West Virginia Mutual Ins. Co.*, 224 W. Va. 544, 687 S.E.2d 123 (2009).

In this case, Frontline requests that we reverse the circuit court's ruling denying its motion to compel arbitration. When ruling upon such motion, the trial court's authority is limited.

> "When a trial court is required to rule upon a motion to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-307 (2006), the authority of the trial court is limited to determining the threshold issues of (1) whether a valid arbitration agreement exists between the parties; and (2) whether the claims averred by the plaintiff fall within the substantive scope of that arbitration agreement.' Syl. Pt. 2, *State ex rel. TD Ameritrade, Inc. v. Kaufman*, 225 W. Va. 250, 692 S.E.2d 298 (2010)."

Syl. Pt. 3, *Hampden Coal, LLC v. Varney*, 240 W. Va. 284, 810 S.E.2d 286 (2018). *See also*, Syl. Pt. 4, *Golden Eagle Res., II, L.L.C. v. Willow Run Energy, L.L.C.*, 242 W. Va. 372, 836 S.E.2d 23 (2019) ("When a trial court is required to rule upon a motion to compel or stay arbitration, the West Virginia Revised Uniform Arbitration Act, West Virginia Code § 55-10-8(b) (2015), limits the authority of the trial court to determining whether a litigant has established: (1) the existence of a valid, enforceable agreement to arbitrate between the parties; and (2) that the parties' controversy falls within the substantive scope of that agreement to arbitrate.").

We begin our analysis by addressing the first issue raised in *Hampden Coal*: Does a valid arbitration agreement exist between the parties? The parties in the case *sub judice* are Frontline, Respondent Rutledge and Respondent Barclay. Respondents' original creditors, Beneficial and Credit One, are not parties to this case. Frontline, by its own admission, is not the original creditor, nor is it the purchaser of Respondents' debts. Respondents' concession that there were arbitration provisions with their *original* creditors relieves Frontline of a portion of its initial burden of proving the existence of an agreement to arbitrate. However, it does not prove that such agreement exists "between the parties." Those agreements were between Respondents and their original creditors. Respondents argue that Frontline cannot enforce the original creditors' right to compel arbitration without proving assignment of that right, and we agree. A party, such as Frontline, cannot enforce the original creditor's right to compel arbitration without proving assignment of that right.

Frontline claims that it has the right to invoke the arbitration provisions as an agent of the assignees of the original creditors. "An assignment of a right is a manifestation of the assignor's intention to transfer it by virtue of which the assignor's right to performance by the obligor is extinguished in whole or in part and the assignee acquires a right to such performance." *Restatement (Second) of Contracts* §317(1) (1981). "An agreement to arbitrate will not be extended by construction or implication." Syl. Pt. 3, in part. *SWN Production Company, LLC v. Long*, 240 W. Va. 1, 807 S.E.2d 249 (2017). To compel arbitration, Frontline must prove the assignment of that particular right from the original creditor to its current client or to itself. Frontline carries the burden to prove the assignment of the right to arbitrate. In *Alarcon v. Vital Recovery Servs.*, 706 Fed. Appx. 394, 2017 WL 6349399 (9th Cir. 2017), the court denied a motion to compel arbitration where "[t]here is no evidence at all that the [original creditor] assigned its rights to [the debt collector] or any other intermediary assignee."

4

We are troubled by Frontline's inconsistent descriptions of its status as it relates to the Respondents' debts. In its Memorandum of Law in Support of Motion to Compel Arbitration before the circuit court, Frontline described itself as "an agent of both Beneficial and Credit One." This is clearly not the position that Frontline now takes as it alleges that its authority comes from assignment of such right to arbitration by the current owners of the debts.[5]

According to Frontline, CACH, LLC bought Respondent Rutledge's debt and hired Frontline to attempt to collect the debt. As to Respondent Barclay, Frontline alleges that LVNV bought Respondent Barclay's debt directly from Credit One Bank and authorized Frontline to serve as its collection agent for the Barclay debt. In support of its position that it is a valid assignee and authorized to enforce the arbitration provisions that Respondents entered into with their original creditors, Frontline provided a declaration[6] from Lauren Savage, the Director of Compliance & Litigation for Frontline, as well as other documents that it alleges "only the current owner of the subject debts would have in their possession."[7] In addition, Frontline included copies of letters that it sent to Respondents telling them that their respective debts had been turned over to it for collection and further indicating the current creditor to whom the debt is owed.

Our review of the documentation produced by Frontline in support of its motion to compel arbitration leads us to the conclusion that such documentation is insufficient to prove that Frontline was assigned the right to compel arbitration against Respondents. The circuit court correctly noted that Frontline cannot prevail without establishing a link between itself and the original lender. The Declaration of Lauren Savage is conclusory at best. In paragraph 10, she states that, "Frontline has determined during the course of its investigation into the claims asserted in the Complaint that it was assigned delinquent credit accounts for [Respondents]." Such statement is merely conclusory in nature. Frontline has provided no persuasive documentary evidence of the assignment it alleges forms the basis of its right to compel arbitration.

Frontline now seeks to have this Court vacate the circuit court's order and remand this case so that it can conduct discovery on the assignment issue as well as potentially conduct a hearing on the issue.

Frontline first filed a motion seeking to compel arbitration approximately two years ago. Frontline produced documents that it maintained supported its position and noted that some of those documents were documents that "only the current owner of the subject debts would have in their possession." However, Frontline did not produce any documents from the purported current

---

[5] We note counsel for Frontline's contention that the description before the circuit court was a mistake.

[6] The Declaration of Lauren Savage was executed on April 25, 2019. This declaration has been referred to as an affidavit on multiple occasions, but it is not notarized.

[7] These documents included the Beneficial Account Agreement and Arbitration Rider regarding the Rutledge debt and a copy of the Credit One Bank Visa/Mastercard Cardholder Agreement regarding the Barclay debt.

owners of the subject debts. It simply represented to Respondents as well as the circuit court and this Court its belief as to who currently owned the debts. Despite alleging that it is the agent of the assignees of the Rutledge debt and the Barclay debt, Frontline now seeks to conduct discovery of non-parties.

In its brief before this Court, Frontline describes its purported clients as "non-parties to this action" and "debt-purchasing entities" that assigned the debts to Frontline to attempt collection. However, if the current owners of Respondents' debts (Frontline's clients) are the assignees from the original creditors, it stands to reason that Frontline would possess or could have readily obtained that documentation to prove assignment from its clients.[8] For example, if Frontline's client, CACH, LLC, purchased Respondent Rutledge's debt from the original creditor, Beneficial, CACH, LLC should have the documentation regarding the purchase as well as information about what rights, if any, were assigned. It is unreasonable that two years have passed without Frontline being able to obtain such documents from its own clients.[9]

Frontline also alleges that the circuit court erred by applying the wrong standard in ruling on its motion to compel arbitration and by refusing to permit discovery and conduct a trial or evidentiary hearing on the arbitration issue. We are not persuaded by Frontline's argument that the circuit court jumbled the legal standards for its outstanding motions and erroneously applied the incorrect legal standard. As this Court has previously observed, "motions to compel arbitration exist in the netherworld between a motion to dismiss and a motion for summary judgment." *Atl. Credit & Fin. Special Fin. Unit, LLC v. Stacy*, No. 17-0615, 2018 WL 5310172 at *4 (W. Va. Oct. 26, 2018) (citing *Shaffer v. ACS Gov't Servs., Inc.*, 321 F.Supp. 2d 682, 683-684 (D. Md. 2004)). As discussed above, we find no error in the standard applied by the circuit court. Further, Frontline has cited no authority in which this Court has required a trial or evidentiary hearing to determine the assignment of an arbitration provision, and we decline to do so under the facts of this case.

---

[8] Frontline claims that the original creditors assigned the debts only once and those assignments were to Frontline's clients, CACH, LLC and LVNV Funding, LLC.

[9] This is not the first case in which Frontline sought to compel arbitration by arguing that an arbitration agreement has been assigned. In 2018, the United States District Court for the Northern District of Illinois ruled in Frontline's favor in a case involving the same creditor as the one in Respondent Barclay's case. *Fuller v. Frontline Asset Strategies, LLC*, No. 17-C-7901, 2018 WL 1744674 (N.D. Ill. April 11, 2018). In *Fuller*, Frontline sought to compel arbitration of Ms. Fuller's claims, and the court agreed after finding that the defendants in that case had "met their burden of demonstrating that the arbitration agreement exists and was validly assigned." *Id*. at *3. (The defendants in the *Fuller* case were Frontline Asset Strategies, LLC, LVNV Funding, LLC and Resurgent Capital Services, L.P.) However, in that case, the defendants attached an affidavit of the Vice President of Credit One who attested to the date and fact that Credit One actually sold all rights, title, and interest in Ms. Fuller's account, which were ultimately transferred and assigned to LVNV. In addition, the defendants produced another affidavit that attached copies of business records of LVNV relating to its acquisition of Ms. Fuller's account. The affidavit was executed by Amanda Hammond, a paralegal with defendant Resurgent Capital Services, L.P., whose job functions included serving as a records custodian for LVNV.

Accordingly, we find that Frontline has not established that the arbitration rights of the original creditors were effectively assigned to it. Therefore, Frontline has failed to show that a valid arbitration agreement exists between it and Respondents. The circuit court did not err in denying Frontline's motion to compel arbitration and we affirm that decision.

Affirmed.

**ISSUED**: May 17, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton